375 So.2d 1125 (1979)
William S. MASON, III, Appellant,
v.
STATE of Florida, Appellee.
No. LL-289.
District Court of Appeal of Florida, First District.
October 4, 1979.
Rehearing Denied November 6, 1979.
*1126 Gene T. Moss and Alan C. Jensen of Moss & Jensen, Jacksonville, for appellant.
Jim Smith, Atty. Gen., A.S. Johnston, Asst. Atty. Gen., for appellee.
LARRY G. SMITH, Judge.
Appellant entered a plea of nolo contendere to a charge of possession of more than five grams of marijuana, reserving the right to appeal the trial court's denial of his motion to suppress evidence. We find no error in the trial court proceedings and affirm.
The question presented for consideration is whether the trial judge erred in denying appellant's motion to suppress without an evidentiary hearing to determine whether intentional misstatements of fact were made in the affidavit for the search warrant pursuant to which drugs were recovered from appellant's residence.
The rather unusual factual circumstances surrounding the issuance of the warrant, and the events which gave rise to appellant's challenge to the same must be briefly outlined. On December 22, 1977 one Jacky Shea was arrested for leaving the scene of an accident. After his release from the Duval County Jail he returned to the scene with the appellant, William S. Mason, III, and began searching for Methaqualone tablets he had hidden on nearby private property. Shea and appellant were apprehended by a highway patrolman at the scene. After being advised of his constitutional rights Shea made statements to the trooper that the Methaqualone tablets were part of a larger quantity located in appellant's residence, and that on the previous day he had observed approximately 1,500 of the tablets being placed in plastic bags by appellant. He also stated that the tablets had been placed in a desk located in the front of appellant's house, and that he had further observed approximately five bags of marijuana in appellant's bedroom. Based upon Shea's affidavit a search warrant was issued on December 23, 1977, and executed on the same date with the result that 1,300 Quaalude tablets, marijuana, *1127 some pipes, scales and other items were recovered from appellant's residence.
On December 27, 1977 the same Jacky Shea (Jacky Merle Shea, Jr.) made a sworn statement in the office of appellant's attorney. Based upon the contents of the sworn statement, which was stenographically reported and transcribed by a reporter from a local reporting service, appellant's counsel made and filed a motion to suppress the evidence seized by means of the search warrant, alleging, among other things, that the search warrant affidavit made by Jacky Shea was false in certain respects, as follows:
The search warrant issued herein was based on an affidavit signed by one Jacky Merle Shea, and that said affidavit is false insofar as alleging that the defendant had possession of the evidence sought to be suppressed herein, and that the said Jacky Merle Shea has sworn under oath that the above evidence belonged to him, and not to the defendant as previously alleged in the affidavit.
On appeal appellant relies for reversal upon the contentions (1) that the court erred in failing to hold an evidentiary hearing to determine the truthfulness of the search warrant affidavit, and (2) that the court erred in denying a motion to dismiss based upon the failure of the state to produce the witness, Jacky Shea, in response to appellant's demand for discovery. As for the second point, absent some claim of wrongdoing on the part of the state, there is no error in refusal to dismiss a proceeding because of the failure of a witness subpoenaed by the defendant to appear for discovery purposes. See State v. Roig, 305 So.2d 836 (Fla. 3rd DCA 1974); State v. DeVille, 258 So.2d 492 (Fla. 3rd DCA 1972); Lewis v. State, 320 So.2d 435 (Fla. 3rd DCA 1975); State ex rel. Gerstein v. Durant, 348 So.2d 405 (Fla. 3rd DCA 1977); State v. Banks, 349 So.2d 736 (Fla. 3rd DCA 1977). On this point we have not overlooked the rather oblique references to threats from the "vice squad" related by Shea in his December 27 sworn statement, including a reference that he had been "told to leave town". It is not at all clear from the statement to whom Shea was referring, and in any event, the motion to compel production, or in the alternative, to dismiss the information contains no reference whatever to any improper action on the part of the state in connection with Shea's failure to appear for his deposition. Had there been any basis for such an assertion appellant's counsel could and presumably would have presented such grounds in the motion, since it was filed some six weeks following Shea's December 27 statement. This ground having not been presented in the trial court cannot now be urged on appeal. See Dickenson v. State, 261 So.2d 561 (Fla. 3rd DCA 1972); 3 Florida Jur. 2nd. Appellate Review, Section 92; Rule 3.190(h), Florida Rules of Criminal Procedure.
Turning to Shea's sworn statement attempting to recant his search warrant affidavit, we note the following finding by the trial court in the order denying the motion to suppress:
4. The sworn statement alone contains so many generalities and inconsistencies that it would seem to the court to have been taken at a time when the affiant may not have been mentally coherent. As indicated earlier, it was not taken during an adversary, judicial procedure such as a motion to suppress at which occasion this judge could have observed the affiant and questioned him. It is against penal interest which gives it some indicia of reliability.
We agree totally with the trial judge's observations concerning the sworn statement. It is rambling, incoherent in many parts, as well as being vague, ambiguous, and even conflicting on crucial details. For example, he denied seeing the Methaqualone tablets at appellant's residence at one point, then later stated that he knew the tablets were there because they belonged to him. During his interrogation by appellant's counsel his search warrant affidavit was read to him and he was then asked whether it was true. He denied it was true but gave "no response" to the question "what is true?". Thereafter, by a process of leading and *1128 prodding, he was induced to say that the Methaqualone belonged to him, and that he was only trying to "save my own hide" by saying that they were not his. He gave no audible response when asked if he knew who owned the Methaqualone and marijuana, and gave no response when asked whether William Mason was present when the large quantity of tablets referred to in the affidavit were being distributed. Then he gave a "no response" answer to the question whether he ever had any drugs in appellant's house, and answered "no" to whether he had drugs in "Billy's apartment". After an off the record discussion appellant's counsel stated on the record that Shea was trying to explain it was a house and not an apartment. He gave no audible answer to the question whether Billy Mason knew anything about "these Quaaludes". He admitted, however, that he did go to appellant's house on various occasions and that he was welcome there; that he had just come from New Mexico and had been back in Florida for approximately a month; and in response to a question as to how long the Quaaludes had been in appellant's apartment, he stated, "oh, as far as Billy knows or anybody else knows, they been around for a long time". The following exchange between counsel and Shea then occurred:
"Q. What do you mean as far as they know? I don't understand that. No one knows but you how long they been there.
"A. (Nodding)
"Q. Is that what you are saying?
"A. (Nodding)
"Q. Are you telling me that Billy Mason did not know they were in his apartment?
"A. (Nodding)
"Q. Speak up, please.
"A. Yes sir.
"Q. That's correct? He did not know?
"A. Yes, sir."
The above references illustrate both the suggestive nature of the questions and the vague and equivocal responses made by Shea when questioned by appellant's counsel in his office. After reading the statement we can say, with some degree of certainty, that Shea claimed ownership of the Methaqualones. However, counsel's attempt to extract from Shea a statement that appellant had no knowledge of their presence in the house leaves much to be desired from the standpoint of certainty, and it is our conclusion that this lack of definiteness and all the other circumstances surrounding the statement by Shea must be taken into account by the trial judge in determining whether an attempted retraction of the search warrant affidavit must be considered sufficient to require an evidentiary hearing. In this connection we observe that appellant's counsel chose to interview Shea and obtain his statement without notice to the State Attorney; and we observe further that the presence of the appellant during the interrogation of Shea by his counsel, while it does not necessarily imply coercion, at least raises questions as to the spontaneity or voluntariness of Shea's statements. Furthermore, we must conclude that appellant was responsible for bringing Shea into his lawyer's office for the purpose of making the statement, since in the statement itself Shea declares that he had never before met appellant's counsel, nor talked with him on the telephone. Thus the possibility of collusion between appellant and Shea is not beyond consideration.
The law is now settled that a defendant in a criminal proceeding has the right, under the Fourth and Fourteenth Amendments, subsequent to the ex parte issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 667 (1978). Prior Florida decisions are in accord with this holding. Baker v. State, 150 So.2d 729 (Fla. 3rd DCA 1963); State v. Jacobs, 320 So.2d 45 (Fla. 2nd DCA 1975); Stipp v. State, 355 So.2d 1217 (Fla. 4th DCA 1978); Clark v. State, 359 So.2d 458 (Fla. 3rd DCA 1978).
In State v. Jacobs, supra, the trial judge concluded that it was necessary to go behind the statements contained in the warrant affidavit. An evidentiary hearing was held pursuant to Florida R.Cr.P. 3.190(h), *1129 after which the trial judge determined that the affidavit was insufficient to establish probable cause. On appeal, the court held that where an attack has been made upon the truth of the affidavit it became incumbent upon the trial judge to determine whether the affiant made any material misstatements in the warrant affidavit, and since the trial judge made no findings or conclusions on the basis of the evidence presented, the case was remanded to the trial judge for the purpose of making findings as to whether any statements in the warrant affidavit were successfully contradicted or proven erroneous.
Section 933.18, Florida Statutes, dealing specifically with issuance of search warrants for private dwellings, provides in part that no warrant shall be issued except "on sworn proof by affidavit of some creditable witness". Under this statute a private citizen has been held to be a "creditable witness". Kaplan v. State, 347 So.2d 659 (Fla. 4th DCA 1977). The Florida cases cited above make it clear that a post-warrant attack upon the search warrant affidavit may be made based upon alleged false statements in the affidavit. In addition, Rule 3.190(h), Fla.R.Cr.P., sets forth specific grounds which may be asserted in a motion to suppress, and the rule itself contemplates a hearing "if the motion is legally sufficient".
It appears to us that the trial judge acted in accordance with the applicable law, and that upon consideration of the motion he determined that the same was not legally sufficient to require an evidentiary hearing. We have examined the opinion of the United States Supreme Court in Franks v. Delaware, supra, with particular attention to the question of whether the procedures followed in this case run counter to those declared to be necessary to satisfy requirements of the Fourth Amendment. Even assuming, without deciding, that these requirements as expressed in the Franks case would apply equally to private citizens as well as governmental officers who execute warrant affidavits, we determine that the Franks decision does not require reversal.
The specific holding of the Franks decision is that the rule adopted by the Supreme Court of Delaware, which imposed an absolute ban on post-search impeachment of warrant affidavits, could not be constitutionally upheld. The Franks opinion set forth the following guidelines governing post-search reexamination of warrant affidavits based upon the integrity of the affiant:
"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challengers attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth [and Fourteenth] Amendment, to his hearing. Whether he will prevail at that hearing is, of course, another issue." (Franks v. Delaware, 438 U.S. at pages 171 and 172, 98 S.Ct. at page 2685.)
Because of Delaware's absolute rule, its courts did not have occasion to consider the proffer made by petitioner in the Franks case. The court declined to pass on petitioner's *1130 proffer, "Since the framing of suitable rules to govern proffers is a matter properly left to the states ..." (Franks v. Delaware, 438 U.S. page 172, 98 S.Ct. page 2685).
The motion here alleges falsity of Shea's warrant affidavit only insofar as ownership and possession of the evidence was concerned. In his post-warrant statement, as above pointed out, Shea declared himself to be the owner of the Methaqualones, not appellant. However, the search warrant affidavit contains no statement as to ownership of the drugs. As to possession, the warrant affidavit states that the drugs were located in appellant's house, and this fact is not controverted. The only real issue made by Shea's later statement concerns whether appellant had knowledge of the presence of the Methaqualones in his home. Here we agree that the trial court was justified in finding Shea's later statements on this issue to be insufficient to constitute a substantial showing of material falsity sufficient to entitle appellant to overturn the search warrant. The warrant affidavit alleges that Shea had seen the drugs in appellant's house, and his later statement acknowledges that he had free access and was welcome there, and had been there on many occasions. Actual ownership of the Methaqualones would be immaterial to existence of probable cause for issuance of the warrant, because violations of the drug laws could occur in someone's home even though the owner of the home is not the owner of the drugs. Furthermore, the post-warrant statement by Shea does not label as false Shea's warrant affidavit statement concerning the presence of the marijuana in appellant's home.
It is clear from the record of the hearing on the motion before the trial court that appellant's counsel relied solely upon Shea's statement for invalidation of the warrant. Appellant's counsel stated to the court that the motions to suppress and to dismiss "would have to be based upon the testimony of Shea, which we can't get ...". Shea was, as a matter of fact, unavailable, although it appears that appellant's counsel had the last contact with Shea when Shea called by telephone after making his statement, and appellant's counsel secured a continuance of a case pending against him in the county court. There were no other affidavits or sworn statements, or offer of further proof by appellant. We conclude that appellant's motion falls short of the "substantial preliminary showing" required under the Franks decision so as to entitle appellant to any further consideration of the falsity of the warrant affidavit.
We hold that the trial judge was correct in refusing to give credence to Shea's statement, standing alone, so as to invalidate the probable cause finding of the trial judge who issued the warrant, and in the absence of further grounds or offer of proof by appellant we find no error in the court's refusal to hold an evidentiary hearing.
The judgment and conviction appealed from is hereby affirmed.
BOOTH, J., concurs.
ERVIN, Acting C.J., concurs and dissents.
ERVIN, Acting Chief Judge, concurring and dissenting.
While I agree with the majority that there was no error in denying Mason's motion to dismiss because there was no showing at the trial level of wrongdoing by the state, I must disagree that Shea's veracity challenge did not meet the substantial preliminary showing as a predicate for an evidentiary hearing, required by Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). I do not agree the Franks decision necessitates an impeaching statement to be so free from ambiguity as the majority now states. Mason's attempt to obtain an evidentiary hearing is met on all sides by possibilities: The possibility, as stated by the trial court, that Shea's sworn statement may have been given at a time when he was not mentally coherent; the possibility opined by the majority of collusion between Shea and appellant. While such possibilities may exist, I do not read Franks as authority for denying a hearing *1131 on the basis of such tenuous suppositions. A hearing may indeed establish the dark suspicions voiced by the majority; those suspicions are not, in my judgment, grounds for denial of the hearing.
It is apparent from Shea's statement that he lived immediately adjacent to Mason's residence; that he had access to it at all times, and that the opportunity existed for him, if he wished, to stash drugs inside Mason's dwelling. While Shea's statement is not altogether free from uncertainty whether Mason was unaware that the drugs were within his home, I do not think it an altogether unreasonable inference from the responses made that Mason was without knowledge. I would not go so far as to say that Shea's challenge to his prior affidavit overcame the presumption of validity accorded to the affidavit, only that it made a sufficient showing of Mason's entitlement to a hearing.
Shea's affidavit supporting the search warrant recited that Shea observed Mason place approximately 1500 methaqualone tablets in plastic bags at Mason's home; that Shea saw five bags of marijuana in Mason's bedroom. After reading to Shea his affidavit,[1] Mason's attorney elicited a negative response from Shea to the question whether the statement was true. Shea stated the reason he gave the false statement was because he was attempting to save his "own hide." He said also that a deal had been cut between him and the arresting officer, which he described as follows:
A. [T]he officer that arrested me over at Confederate Point said that he had witnesses and people that saw me with these metha-Quaaludes; that I had stashed them in these  in these bushes and that they were going to charge me with them. And he said that they  that  that there were anywhere from a hundred to a thousand they found and they were gonna  they were gonna charge me with that and, you know, send me up the river with no paddle.
Q. So what did you decide to do then?
A. What I decided to do then was  was just  was to save my own hide and say, you know, that they weren't mine.
Q. But were they yours?
A. Were they mine?
Q. Yes.
A. Yes.
When asked "whether or not there was anything in ... Mason's apartment" or whether he "[h]ad ever seen anything in that apartment", Shea replied "No, sir." Finally, when asked whether Mason knew the drugs were in his apartment, Shea responded he did not.
It is true the questions asked were leading; that the answers given were, on occasion, ambiguous, and that Shea was not interviewed in the presence of a member of the State Attorney's office. I question, however, whether affidavits supporting search warrants, or their affiants, are subjected, in many cases, to the same exacting scrutiny prior to the issuance of warrants as the majority now requires of recanting statements.[2] To say, however, Shea's statement establishes no substantial preliminary showing for a hearing, is, in my view, an unwarranted deviation from the Franks decision which explained thusly the relaxation of an inflexible rule banning an impeachment of a prior affidavit's veracity:
The requirement that a warrant not issue "but upon probable cause, supported by Oath or affirmation," would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile. 438 U.S. at 168, 98 S.Ct. at 2683, 57 L.Ed.2d at 680.
Here the credibility of the affiant's representations led to the magistrate's conclusion *1132 that probable cause existed for the issuance of the search warrant. There was no other independent information which the magistrate had before him to base his probable cause determination that drugs were inside Mason's home. If Shea's later statement is in fact true that his affidavit was the result of a deliberate falsehood, Mason is clearly entitled to have his motion to suppress granted. To require, as does the majority, the degree of specificity as a predicate to the allowance of an evidentiary hearing places a nearly insurmountable barrier between a defendant and his quest to establish the truth. If sufficient information is received that law enforcement officers were either responsible for or assisted in a deception leading to a search of one's effects, that information should be fully aired  not swept away from further inquisition.
I would remand this case for a full evidentiary hearing.
NOTES
[1] Shea was unable to read or write.
[2] Often magistrates issue arrest and search warrants routinely, particularly in large urban areas, "without any independent inquiry into the facts and circumstances of the case." Lafave, Arrest: The Decision to Take a Suspect Into Custody, 502-03 (Remington ed. 1965).