COBB, Chief Judge.
The State appeals an order of suppression entered by the trial court. The suppression was based on the trial court’s findings that a nongovernmental affiant, who supplied the essential facts for the issuance of the search warrant in this case, repudiated those facts in a subsequent video deposition. The issues on appeal concern the status and veracity of that affiant, and the applicable test to evaluate warrant affiants whose veracity is challenged.
On October 21, 1981, Officer Michael Blubaugh of the Cocoa Police Dept., submitted two affidavits as a basis for a search warrant to establish that marijuana and cocaine were being illegally kept at the residence of appellee, Donald Terry Robinson. The first affidavit was supplied by Officer Blubaugh, the second by Donald Love Martin, a private citizen.
Blubaugh’s affidavit stated, to-wit:
That on Wednesday, October 21, 1981 affiant met with a confidential informant who told affiant that he had lived in the residence occupied by DONALD TERRY ROBINSON for approximately ten (10) days in the month of June 1981 and while living there for these ten (10) days the confidential informant personally observed DONALD TERRY ROBINSON buy and sell large quantities of cocaine and marijuana. The confidential informant is familiar with both cocaine and marijuana and personally knew that the substances were cocaine and marijuana. The confidential informant stated further that during the past two years he has been to this residence on numerous occasions and during these times he has observed large quantities of marijuana and cocaine. Affiant states that on this date the confidential informant stated to him under oath in a sworn affidavit that on Tuesday, October 20, 1981 at approximately 1:00 P.M. in the afternoon he was inside of the residence and was present when DONALD TERRY ROBINSON made a sale of cocaine to a white male whose name is unknown to the confidential informant. The confidential informant further stated that he observed marijuana [sic] and cocaine inside of the house while he was there.
The affidavit of Martin stated:
That he was a guest in a house located at 1013 North Indian River Drive in the City of Cocoa, County of Brevard, State of Florida. Affiant states further that while he was staying at this house that is currently occupied by a person known to affiant as DONALD TERRY ROBINSON, a white male approximately 32 years of age, that affiant personally saw on numerous occasions DONALD TERRY ROBINSON receive and sell marijuana and cocaine. Affiant states that he stood in the same room with DONALD TERRY ROBINSON on one occasion in either June or July and personally watched him cut and bag 20 pounds of marijuana. Affiant states that he has personal knowledge of marijuana and positively recognized the substance to be marijuana. Affiant states that since that time he has been present when DONALD TERRY ROBINSON has made numerous marijuana and cocaine sales to different persons whose names are unknown to affiant. Affiant states that on Tuesday, October 20, 1981 he was in the home of DONALD TERRY ROBINSON and was present when he made a cocaine sale to a white male at approximately 1:00 P.M. in the afternoon. Affiant saw DONALD TERRY ROBINSON give the substance that he personally recognizes as cocaine to the white male. After the white male left the premises affiant observed inside of the residence both cocaine and marijuana, affiant cannot determine the exact amount that was inside of the house.
Affiant would add further that this person DONALD TERRY ROBINSON does not work and has no source of income other than selling drugs. Affiant has had personal conversations with DONALD TERRY ROBINSON and he has told affiant that this is how he makes his living, he told affiant on one occasion *442 that he made $50,000.00 for the year of 1981 so far.
It should be noted at this point that DONALD TERRY ROBINSON is the brother-in-law of affiant and he has been in his home on numerous occasions during the past two years and knows the person on a personal basis and has had numerous personal conversations with him concerning the sale of the marijuana and cocaine. Affiant has also observed on numerous occasions [sic] large quantities of marijuana and large quantities of cocaine and has been present on numerous occasions when the sales have been made.
Based upon these affidavits, a search warrant for marijuana and cocaine was issued, resulting in the seizure of a large amount of marijuana, drug paraphernalia, and a cache of cocaine secreted in a safe in Robinson’s bedroom. On February 4,1982, an information was filed charging Robinson with various offenses of trafficking and possession.
On January 10, 1983, a videotaped deposition of Donald Martin was made in the presence of the trial judge. Martin’s deposition reiterated much of what had been stated in his affidavit. In addition, Martin explained that he was in Florida October 17 — 21,1981. The last two days of his visit he spent in Brevard County, where he stayed at the home of Robinson’s estranged wife, Margaret. During these two days, he visited Robinson twice, once on the 20th, at which time he did not go into Robinson’s home but stayed outside, and again on the 21st, when he entered into the home and stayed for approximately an hour to an hour and a half, during which time he observed a cocaine transaction. Martin further testified that Robinson had told him that he had a safe in the house, which was located in his room; that though Martin had never seen the safe, Robinson had headed to and returned from that direction when he obtained the cocaine. Martin noted that in discussion with Officer Blubaugh, he had not told the officer that he was staying with the Robinson on October 20 and 21; instead, he said that he had told him he was staying with Robinson’s estranged wife.
On January 25, 1983, Officer Blubaugh’s deposition was taken. He testified that Martin had told him that he had been in Robinson’s house several times, and that while he was living there he had seen numerous drug transactions. In addition, Blubaugh stated that Martin told him that he was living with Robinson at the time, i.e., on October 21, 1981, when the statement was given. Blubaugh further recalled that Martin had informed him that he had observed on that very day the sale of a white powdery substance that he knew to be cocaine. He also stated that Martin had explained that there was cocaine located in the safe in the home, and he later testified that Martin had said that he had seen cocaine in the safe. Blubaugh noted additionally that with reference to Martin’s mention of living with Robinson, he could not recall Martin saying how long he had lived with Robinson just prior to the affidavit, although he did recall Martin telling him that he had been living there for ten days during the month of June, during which time he saw several drug transactions.
On February 4, 1983, Robinson filed a motion to suppress, asserting that Martin had made contradictory statements under oath, thereby rendering any of Martin’s statements unreliable. Specifically, Robinson asserted in his motion that Martin had told Police Officer Blubaugh:
... [that] he had personally observed a substance known to him as cocaine in a safe in the defendant’s home, and that he had been living with the defendant up to the day of his arrest; [h]owever, (Martin) testified at the deposition that he never saw any cocaine in the defendant’s safe and that he was not living with the defendant up to the day of his arrest.
On February 7, 1983, the trial court granted the motion to suppress, stating that having considered the deposition of Mike Blubaugh and the deposition of Donald L. Martin, that Martin:
*443 ... did not have an “overwhelming basis of knowledge” as represented to Officer Blubaugh for the purpose of securing the search warrant; but in fact, did not live in Defendant’s house and had not, within a reasonable time prior to the issuance of the search warrant, visited Defendant’s home on numerous occasions or observed numerous drug transactions and ... that had such facts been presented to the magistrate, the search warrant would not have been issued.
The court, noting that the state announced it could present no evidence, dismissed the case. The state now seeks review of the suppression order.
We reverse and remand for trial because the trial court’s findings in its suppression order are unsupported by the evidence. Nothing in Martin’s deposition refutes the fact that he lived in Robinson’s house in June, 1981, nor that he had visited Robinson’s home on numerous occasions and observed drug transactions there. Nothing in Martin’s deposition refutes the facts he related to Officer Blubaugh as those facts are recited in Blubaugh’s affidavit. Martin never claimed, in either his affidavit or his deposition, that he lived with Robinson in October, 1981, or that he had seen cocaine in Robinson’s safe. Blu-baugh’s recollection, more than a year after the occurrence, was that he had been told that Martin lived with Robinson in October (rather than in June) and that Martin had seen the cocaine in Robinson’s safe (rather than being told it was there by Robinson). These apparent errors by Blu-baugh at the time of his deposition in 1983 are not reflected in either his own affidavit or Martin’s affidavit, which were used to obtain the search warrant in October, 1981. The only true discrepancy between Martin’s deposition and his affidavit was that in the former he said he observed the cocaine transaction on October 21, 1981, whereas the affidavit states it was October 20, 1981, but neither the trial judge nor Robinson seems to attach any significance to this minor date discrepancy.
Aside from the unsupported factual findings, the trial court’s suppression order is reversible on another legal basis. Martin clearly was not a confidential informant, despite his characterization as such in Blubaugh’s affidavit. He gave his own independent affidavit in support of the warrant, revelation of his identity was never objected to by the state or concealed from the defense, and he was deposed by the defense in a pretrial proceeding. Therefore, it was never incumbent upon the police to establish his reliability. Even if Martin had given false information in his affidavit, as the trial court found, he was not a governmental official and there was no finding that Officer Blubaugh was acting with knowledge of any falsity or with reckless disregard for the truth when he submitted the affidavits. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); U.S. v. Phillips, 727 F.2d 392 (5th Cir.1984).
In Franks it was held that when a defendant makes a substantial preliminary showing that a false statement, intentionally or recklessly made, is included in the warrant affidavit and is necessary to a finding of probable cause, an evidentiary hearing is constitutionally mandated by the Fourteenth Amendment. If, at that hearing, it is established by a preponderance of the evidence that the false statement was knowingly or recklessly made, and was necessary for probable cause (i.e., the warrant cannot be supported without the false statements), then the search warrant must be voided and the fruits of the search excluded. The Franks decision expressly limited its applicability to governmental, as opposed to nongovernmental, affiants. See Franks, 438 U.S. at 171, 98 S.Ct. at 2684. In the instant case, Martin clearly is a nongovernmental affiant. Since he was not a confidential informant, Blubaugh cannot be faulted for failing to establish Martin’s reliability and failing to recite the indicia of that reliability in Blubaugh’s own affidavit.
We decline to extend the exclusionary rule of Franks to include misrepresen *444 tation by nongovernmental affiants in the absence of any wrongdoing, whether intentional or recklessly negligent, by a governmental officer. Cf. Mason v. State, 375 So.2d 1125 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 639 (Fla.1980). In point of fact, the United States Supreme Court recently has adopted a broadened good faith exception to the exclusionary rule in U.S. v. Leon, — U.S. -, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984):
The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure “work[s] no new Fourth Amendment wrong.” ...
Whether the exclusionary sanction is appropriately imposed in a particular case, or decisions made clear, is “an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.”_
The substantial social cost exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern. “Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth finding functions of judge and jury.” United States v. Payner, 447 U.S. 727, 734 [100 S.Ct. 2439, 2445, 65 L.Ed.2d 468] (1980). An objectionable collateral consequence of this interference with the criminal justice system’s truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system....
We conclude that the marginal or non-existent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion.
Id. at -, 104 S.Ct. at 3412-13.
For the foregoing reasons, we reverse the trial court’s order of suppression, and remand for further proceedings consistent with this opinion.
REVERSED.
DAUKSCH and ORFINGER, JJ., concur.