[Crim. No. 22317. Second Dist., Div. Five. June 29, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EARL MILLER, Defendant and Appellant.

**COUNSEL**

Harry E. Weiss for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Charles J. Moore, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—By information, defendant was charged with possessing marijuana for sale. (Health & Saf. Code, § 11530.5.) Defendant pleaded not guilty and moved to suppress certain evidence pursuant to Penal Code

section 1538.5. A 1538.5 hearing was held, and the motion was submitted on the evidence adduced at that hearing and on the transcript of the preliminary hearing. The 1538.5 motion was denied, and defendant submitted his cause on the transcript of the 1538.5 hearing and on the transcript of the preliminary hearing. Defendant was found guilty. Defendant's motion for a new trial was denied, but defendant's conviction was reduced to mere possession of marijuana (Health & Saf. Code, § 11530). Proceedings were suspended, and defendant was granted three years' probation with the condition, among others, that defendant spend the first 90 days in the county jail. Defendant appeals.

On December 18, 1970, Los Angeles City Police Officer Miller and other policemen went to defendant's apartment in order to investigate a trustworthy informant's tip that defendant "was dealing marijuana" from that apartment. Miller knocked, and defendant opened his door. Miller was "outside of [defendant's] doorway, within . . . one foot of [the] door. The defendant was inside of his doorway within his living room area. He had just opened the door." Miller identified himself to defendant and explained that he was "conducting a narcotics investigation." Miller then detected "a smell of marijuana, not burning marijuana, just plain marijuana smell" coming from within defendant's apartment. Miller placed defendant under arrest for possession of marijuana and for being present where marijuana was being used. Miller thereupon stepped into defendant's apartment in order "to effectuate the arrest, and to make certain that no other individuals were within that apartment." Once Miller had entered the apartment, Miller "noticed that in one corner, or by a doorway, there were two boxes. One box piled on top of the other box. [Miller] could see over the portion that was not covered by the blanket that there were paper wrapped kilo shaped objects in this box, and in [Miller's] opinion these were kilos of marijuana." The boxes that Miller observed were approximately "eight to ten feet from the front door." Miller went to the objects and "opened one . . . slightly." The object contained marijuana. Miller then told defendant that defendant was under arrest for possession of marijuana for sale and advised defendant of defendant's constitutional rights. Defendant asked to talk to an attorney. Miller then asked defendant for permission to search the apartment. Defendant said: "Well, I don't know. I'd like to ask a [policeman] friend of mine if I should let you go ahead and search." Miller replied that defendant "had the right not to allow [him] to search the residence, and if [defendant] so desired, [he] would not search; that [he] would attempt to obtain a search warrant at that time." Defendant then telephoned his policeman friend who advised defendant to allow Miller to search defendant's apart-

ment. Defendant told Miller to "go ahead and search." Miller did search, and the search produced additional quantities of marijuana.

On appeal, defendant contends that all of the marijuana that was found within his apartment was seized illegally, and that the courts below have erred in not ordering the marijuana suppressed from evidence. We disagree.

Miller was justified in going to defendant's apartment to investigate his tip that marijuana was being sold from that apartment. (*People* v. *Superior Court (Manfredo)* 17 Cal.App.3d 195, 201 [94 Cal.Rptr. 643].) Officer Miller's sense of smell, in addition to other facts known to him, gave him probable cause to believe that a felony was being committed in his presence and to arrest defendant. (*Mann* v. *Superior Court,* 3 Cal.3d 1, 7 [88 Cal. Rptr. 380, 472 P.2d 468]; *People* v. *Leighter,* 15 Cal.App.3d 389, 395 [93 Cal.Rptr. 136]; *People* v. *Peterson,* 9 Cal.App.3d 627, 633 [88 Cal. Rptr. 597]; *People* v. *Nichols,* 1 Cal.App.3d 173, 175 [81 Cal.Rptr. 481].) Miller did arrest defendant, but then Miller entered defendant's apartment in order "to effectuate the arrest, and to make certain that no other individuals were within that apartment." After having entered the apartment, Miller observed the wrapped objects. He went to the objects and opened one to confirm his belief that they were in fact kilos of marijuana. The seizure of the boxes of kilos was incident to the arrest. They were in plain sight and hence not the product of a search. Officer Miller was an expert in narcotics, narcotics investigation, narcotics paraphernalia, and the manner in which narcotics are currently packaged and sold in Los Angeles. As an expert, the officer formed the opinion that the objects were kilos of marijuana.

The California Supreme Court in *Abt* v. *Superior Court,* 1 Cal.3d 418, 421 [82 Cal.Rptr. 481, 462 P.2d 10],[1] ruled that "[t]he probability that a carton of brick-shaped tinfoil-wrapped packages will contain marijuana is not sufficient to justify a search without a warrant." In the instant case, however, the officer did not rely solely upon the shape and wrapping of the marijuana bricks. The evidence before the trial court was that when defendant opened the door, Officer Miller smelled a strong odor of marijuana coming from inside appellant's apartment. It can be reasonably inferred that the detectable odor was ascertained by Officer Miller to be emanating from the large quantity of marijuana just eight feet from the officer.

[1]Overturned on other grounds in *People* v. *McKinnon,* 7 Cal.3d 899, 910 [103 Cal.Rptr. 897, 500 P.2d 1097].

In *People* v. *Marshall,* 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665], Chief Justice Traynor, speaking for the majority in holding that police officers could not rely on their sense of smell in seizing marijuana which was contained in cellophane packages taken from a brown paper bag, said (at p. 59): "Of course officers may rely on their sense of smell to confirm their observation of already visible contraband. [Citations omitted.] To hold, however, that an odor, either alone or with other evidence of invisible contents can be deemed the same as or corollary to plain view, would open the door to snooping and rummaging through personal effects. Even a most acute sense of smell might mislead officers into fruitless invasions of privacy where no contraband is found." The case before us is distinguishable from *Marshall* in that here, there is both the unique packaging of the kilo-shaped marijuana and its notoriously distinctive and identifiable odor. The search in *Marshall* was an exploratory search of the defendant's apartment without a warrant after the officers broke in during his absence. The officers searched the living room, bedroom, the bathroom, and finally found the marijuana in a cardboard box inside a bedroom closet. The marijuana there was contained in a closed brown paper bag. Such an object is completely different from the kilo-shaped bricks of marijuana observed by the officer in the instant case.

Reasonable grounds for believing a package contains contraband may be adequately afforded by its shape and design (*Henry* v. *United States,* 361 U.S. 98, 104 [4 L.Ed.2d 134, 139, 80 S.Ct. 168]; *People* v. *Orr,* 26 Cal.App.3d 849, 860 [103 Cal.Rptr. 266]; *People* v. *Nickles,* 9 Cal.App. 3d 986, 993 [88 Cal.Rptr. 763]), particularly when its identification is indelibly stamped by emission of its markedly identifiable odor.

In *People* v. *Glasgow,* 4 Cal.App.3d 416, 422 [84 Cal.Rptr. 671], the officer observed in plain sight on the floorboard of a car two packages wrapped in brown paper which he recognized to be similar to commercial packages of marijuana as they are prepared for shipment out of Mexico. Before opening one of the packages, he felt it and smelled it to confirm his original suspicions. The court held that the contraband was in plain view (distinguishing *Marshall*). In *People* v. *Superior Court (Manfredo)* 17 Cal.App.2d 195, 199-202 [94 Cal.Rptr. 643], the officer observed narcotics paraphernalia and some balloons on top of a dresser. Inside some of the balloons was a powdery substance which was assumed to be heroin. The heroin was deemed to be in plain view.

In *Marshall,* the only suspicious aspect of the closed paper bag was its smell. Here, although the marijuana was wrapped in paper, the objects maintained a very distinctive shape and manner of packaging. When an

officer sees, in plain view, what he recognizes as kilo-shaped objects, wrapped in the manner known to him to be the way marijuana is typically wrapped, and the packages exude the unmistakably identifiable odor of marijuana, then he is entitled to believe that they *are* packages of marijuana. The fact that the officer later opened the paper wrapping on one brick of marijuana to confirm his belief does not affect the lawfulness of his conduct.

Defendant argues that the search conducted after the seizure of the kilo-shaped packages was illegal. This search produced a relatively small additional amount of marijuana. Under the circumstances of this case, the alleged erroneous failure to suppress the small product of that search could have had absolutely no effect upon the judgment.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.