867 So.2d 534 (2004)
Earl Tracey NELSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-3357.
District Court of Appeal of Florida, Fifth District.
February 27, 2004.
James Dickson Crock of James Dickson Crock, P.A., Daytona Beach, for Appellant.
*535 Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, J.
Earl Tracey Nelson appeals the denial of his motion to suppress and his judgment and sentence for trafficking in cocaine. We affirm.
A registration clerk for the Holiday Inn in Palatka called the police to report that Nelson had registered as a guest of the hotel. The clerk testified at the suppression hearing that a lot of guests were complaining about drug trafficking at the hotel and that suspicions are aroused when someone fits a certain profile. The profile includes the location and type of room in the hotel, payment in cash, nervousness and the fact that the registering guest is a local resident.
The Palatka Police Department was familiar with Nelson since he had been involved in several drug investigations in the past and was currently the target of an ongoing drug investigation. With the permission of the hotel management, a K9 officer took his narcotics sniff dog to the hotel and walked the hallway outside of Nelson's room. The dog was asked to sniff all room entrance doors in the hallway, but the dog alerted only at Nelson's door. The information was then included in an affidavit to obtain a search warrant. The affidavit included the history of the dog who had been a narcotic detection dog for the Palatka Police Department for the past three years. With several handlers, the dog had over 200 documented narcotics finds and was trained to detect the odor of cocaine as well as several other substances. The K9 officer also provided a detailed listing of the dog's experience and training.
After a search warrant was issued to search Nelson's room, police officers entered the unoccupied room and found several small plastic bags of cocaine that through subsequent testimony were tied to Nelson.
Nelson contends that the trial court erred when it determined that the police had the right to walk the hotel's hallways in search of drugs after the hotel's management requested that action. He claims that the management had no right to waive his Fourth Amendment privacy rights to what was the equivalent of his private residence. He also complains that the police did more than walk the hallways of the hotel; they enlisted the use of a sensory enhancing animal that was unable to detect contraband until it was within eighteen inches to three feet of the lower door jam area of his hotel room.

HOTEL MANAGEMENT'S INVITATION TO POLICE
Nelson cites Turner v. State, 645 So.2d 444 (Fla.1994), Gnann v. State, 662 So.2d 406 (Fla. 2d DCA 1995), and Wassmer v. State, 565 So.2d 856 (Fla. 2d DCA 1990), for the general rule that constitutional rights and privileges that apply to occupants of private permanent dwellings also apply to hotel guests and that a hotel manager has no power by consent or invitation to waive a guest's Fourth Amendment privacy rights. We find this general rule is not applicable to the circumstances surrounding the instant case where Nelson did not have a valid expectation of privacy. Areas outside of a hotel room, such as hallways, which are open to use by others may not be reasonably considered as private. E.g., Brant v. State, 349 So.2d 674 (Fla. 3d DCA 1977). In the instant case, the hallway was on the premises controlled by the hotel management and was a common *536 walkway for the use of hotel guests, visitors, employees and probably by the general public. The hotel management was within its rights to invite the police to walk the hallway and no violation of Nelson's Fourth Amendment rights took place. In fact, the Fourth Amendment was not even applicable to any action that took place in the hallway where the police had the right to be.

DOG SNIFF AT THRESHOLD OF HOTEL ROOM DOOR
The trained drug detection dog brought by the police to explore the hotel hallway was not directed to any particular door in the vicinity of Nelson's hotel room. Several doors in the hallway were passed by the dog before it alerted at Nelson's hotel room door.
Nelson argues that the use of a dog's sense of smell is tantamount to the use of a far superior, sensory instrument that enables a human being to detect articles normally discoverable only after entry into residences. Because that entry would require a search warrant, Nelson concludes that such a warrant is necessary before the talents of a narcotics canine is employed. Nelson's argument is supported by his cite to Nebraska v. Ortiz, 257 Neb. 784, 600 N.W.2d 805 (1999). Ortiz in turn cited United States v. Thomas, 757 F.2d 1359 (2d Cir.1985), which held that the defendant's heightened expectation of privacy inside his apartment dwelling rendered a canine sniff at the entrance door to the apartment an illegal search. However, the Thomas decision has been criticized by all federal courts that have considered it, primarily because of the Thomas court's assertion that the defendant had a legitimate expectation that contraband in his closed apartment would remain private. For example, that assertion was challenged by United States v. Colyer, 878 F.2d 469, 475 (D.C.Cir. 1989):
As an initial matter, the very correctness of the Thomas decision is called into question by its assertion that the defendant "had a legitimate expectation that the contents of his closed apartment would remain private." As was shown above, the Supreme Court's analyses in Place and Jacobsen indicate that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed. No legitimate expectation of privacy is impinged by governmental conduct that can "reveal nothing about noncontraband items."[1]
See also United States v. Hogan, 122 F.Supp.2d 358 (E.D.N.Y.2000). United States v. Reed, 141 F.3d 644 (6th Cir.1998); United States v. Lingenfelter, 997 F.2d 632 (9th Cir.1993); United States v. Sklar, 721 F.Supp. 7 (D.Mass.1989);
U.S. v. Roby, 122 F.3d 1120, 1124-25 (8th Cir.1997), considered a factually similar incident to the instant case and is dispositive of the issue raised by Nelson:
The sniff of a trained police dog is quick, and the dog's reaction can frequently signal the presence or absence of contraband. See United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) ("[T]he canine sniff is sui generis. We are aware of no other investigative procedure that is so limited in the manner in which the information is obtained and in the content of *537 the information revealed by the procedure." Id. at 707, 103 S.Ct. at 2644-45). Because a dog's sniff "could reveal nothing about non-contraband items," it does not generally intrude into a person's reasonable expectation of privacy. United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (a test that merely discloses whether a substance is or is not cocaine is not a search within the meaning of the Fourth Amendment).
In this case, we consider whether a canine sniff in the common corridor of a hotel intrudes upon a legitimate expectation of privacy. See United States v. Thomas, 757 F.2d 1359 (1985). "The test of legitimacy is not whether the individual chooses to conceal assertedly `private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." Oliver v. United States, 466 U.S. 170, 182-183, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984). It has long been recognized that reasonable expectations of privacy vary according to the context of the area searched. See O'Connor v. Ortega, 480 U.S. 709, 719, 107 S.Ct. 1492, 1498-99, 94 L.Ed.2d 714 (1987).
Here, Nero walked the Hampton Inn's fourth floor hallway. During this walk, he alerted at Room 426, the room occupied by Mr. Roby. Roby contends the dog's detection of the odor molecules emanating from his room is the equivalent of a warrantless intrusion. We find that it is not. The fact that the dog, as odor detector, is more skilled than a human does not render the dog's sniff illegal. See United States v. Sullivan, 625 F.2d 9, 13 (4th Cir.1980). Just as evidence in the plain view of officers may be searched without a warrant, see Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), evidence in the plain smell may be detected without a warrant. See United States v. Harvey, 961 F.2d 1361, 1363 (8th Cir.1992); See also Horton v. Goose Creek Independent School District, 690 F.2d 470, 477 (5th Cir.1982); United States v. Pinson, 24 F.3d 1056, 1058 (8th Cir.1994) ("plain feel," no reasonable expectation of privacy in heat emanating from a home).
Mr. Roby had an expectation of privacy in his Hampton Inn hotel room. But because the corridor outside that room is traversed by many people, his reasonable privacy expectation does not extend so far. Neither those who stroll the corridor nor a sniff dog needs a warrant for such a trip. As a result, we hold that a trained dog's detection of odor in a common corridor does not contravene the Fourth Amendment. The information developed from such a sniff may properly be used to support a search warrant affidavit.
We find that the remaining issues raised by Nelson on appeal were either not preserved for appellate review or are without merit.
We affirm the trial court's denial of Nelson's motion to suppress and affirm the judgment and sentence.[2]
AFFIRMED.
SHARP, W., and TORPY, JJ., concur.
NOTES
[1] The Place decision cited in Colyer refers to United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), in which the Supreme Court stated that no legitimate expectation of privacy exists when a procedure only reveals the existence of contraband. The Jacobsen reference is to United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
[2] For an excellent 43-page opinion reviewing the issues raised in a dog sniff case see Fitzgerald v. State of Maryland, 153 Md.App. 601, 837 A.2d 989 (2003), authored by Judge Moyer.