884 So.2d 349 (2004)
Milton DE LA CRUZ, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4050.
District Court of Appeal of Florida, Second District.
September 10, 2004.
*350 James Marion Moorman, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
A jury found Milton De La Cruz guilty of trafficking in cocaine, possession of cocaine, and possession of paraphernalia. He challenges only the trafficking conviction, claiming that the State's evidence did not prove he possessed a sufficient amount of cocaine to support that charge. We agree and reverse.
De La Cruz's charges came as a result of law enforcement's attempt to apprehend David Gonzalez on an outstanding felony warrant. Gonzalez's distinctive Ford truck was seen parked outside De La Cruz's residence in Sarasota County. Law enforcement officers from the Florida Department of Law Enforcement and the Sarasota Sheriff's Office converged in the area, and two Sheriff's deputies approached the home. As they knocked on the door, one of the deputies looked through a window and saw De La Cruz on a sofa in the living room. De La Cruz opened the door and allowed the deputies to come inside. Upon entering, the deputies heard a noise coming from the back of the house. They discovered Gonzalez in a bedroom.
At this point, De La Cruz signed a consent to search the home. He said he was the primary renter, although two other people were on the lease. He had lived there approximately five months and was in control of the residence. The other law enforcement officers in the area joined in the search. Several officers testified that De La Cruz appeared to have cocaine residue on his face and on his shirt. A white powdery substance and a rolled-up twenty dollar bill were in plain view on a table in the living room. A plastic baggie containing 2.95 grams of cocaine was found between *351 the cushions on the couch where De La Cruz had been sitting. The officers also discovered a white envelope in a bedroom with residue they suspected was cocaine. Additionally, they discovered money, a digital scale, and a pipe inside a cabinet.
In the garage, law enforcement found a small hydraulic press used to form cocaine into blocks. They also found a suitcase that contained a picture of Gonzalez's brother and clothing that appeared to fit Gonzalez.
One detective searched the kitchen. A cabinet door was open six to eight inches and he noticed what appeared to be a block of soap, encased in plastic wrap, located behind some flour and pasta. He testified that when he moved closer to the cabinet, "[t]he first thing I smelled was a strong smell, which is common with cocaine. It definitely didn't smell like a bar of soap." He moved the other contents of the cabinet aside and "again it looked to be like a bar of soap that was wrapped up, and that struck me as funny. So that coupled with the smell, I decided I would look at the object and I would pull it out." When he began to unwrap the package, he "had a real good idea because of the smell that it wasn't a bar of soap, and the consistency of it" was such that he thought it was "probably cocaine." The contents turned out to be 165.36 grams of cocaine, pressed into a block that fit the dimensions of the hydraulic press discovered in the garage.
As a result of this discovery in the kitchen, the State charged De La Cruz with trafficking based on his actual or constructive possession of more than 28 grams but less than 200 grams of cocaine. See § 893.135(1)(b)(1), Fla. Stat. (2002). De La Cruz maintains the evidence was insufficient to show he actually or constructively possessed the block of cocaine. We agree.
Because De La Cruz was not in actual possession of the block, the State was required to prove he constructively possessed it. In order to do so, the State had to establish that De La Cruz knew the cocaine was in his presence.[1]See Brown v. State, 428 So.2d 250, 252 (Fla.1983); Loyd v. State, 677 So.2d 76, 77 (Fla. 2d DCA 1996).
When the police arrived, the residence was not in De La Cruz's exclusive possession. Gonzalez was inside the home, and officers found personal property that appeared to belong to Gonzalez in the garage. If the place where drugs are found is not in the accused's exclusive possession, knowledge of the presence of and control over the drugs cannot be inferred. The State must provide independent proof of these elements. Loyd, 677 So.2d at 77; Green v. State, 667 So.2d 208, 211 (Fla. 2d DCA 1995).
The State argues that the block of cocaine was in plain view and that this fact is sufficient to establish De La Cruz's knowledge and control. See, e.g., Brown, 428 So.2d at 252. We disagree with the State's premise that the cocaine was in plain view. The block was inside a kitchen cabinet, partly concealed by ordinary kitchen provisions. The officer testified it looked like a bar of soap "all wrapped up" in plastic. No evidence established the contraband was visible through these layers *352 of plastic. In fact, the officer testified that, even after moving the other cabinet contents aside, the package "still looked like a bar of soap." As such, the State presented no evidence that the contraband was in plain view. See Chappell v. State, 457 So.2d 1133, 1134-35 (Fla. 1st DCA 1984) (holding that drugs in manilla envelope were not in plain view for purposes of a constructive possession analysis); see also Bradshaw v. State, 509 So.2d 1306, 1309 (Fla. 1st DCA 1987) (determining that drug paraphernalia contained in a nontransparent bottle was not in plain view in a constructive possession case).[2]
The detective also testified that he could smell the cocaine as he approached the kitchen cabinet. We note that De La Cruz was not in the kitchen and no evidence established that the smell permeated other areas of the home. Furthermore, the detective candidly admitted that he only thought the object was cocaine based on the smell and the fact that it did not smell like soap. Even as he removed the layers of plastic, he only suspected the item was "probably cocaine." These facts do not establish De La Cruz's knowledge of the presence of the cocaine under any sort of "plain smell" theory.
The State offered no other evidence to connect De La Cruz to the cocaine in the kitchen. The police did not obtain fingerprints from the wrapping, De La Cruz never admitted the block was his, and none of his personal effects were found near the contraband. See Loyd, 677 So.2d at 77-78. The evidence that the block fit the cocaine press seemed to implicate Gonzalez more than De La Cruzthe press was found in the garage, near a suitcase that contained items connected to Gonzalez.
De La Cruz does not dispute that the State proved he possessed the cocaine found in the living room. But his knowledge of that contraband does not prove he knew about the cocaine in the kitchen. See Hill v. State, 873 So.2d 491, 493 (Fla. 1st DCA 2004).
The trial court should have granted De La Cruz's motion for judgment of acquittal on the trafficking charge. Accordingly, we reverse the conviction for trafficking. We remand to the circuit court to enter a judgment of acquittal on that charge and to resentence De La Cruz on the remaining convictions for possession of cocaine and possession of paraphernalia.
Reversed.
SALCINES, J., Concurs.
COVINGTON, J., Dissents with opinion.
*353 COVINGTON, Judge, Dissenting.
I respectfully dissent. In my opinion, there was sufficient evidence presented at trial to support De La Cruz's conviction for trafficking in cocaine. As the majority points out, the State was required to prove constructive possession since the contraband was not found in De La Cruz's actual possession. Because De La Cruz was not in exclusive possession of the residence,
his knowledge of the presence of the contraband on the premises and his ability to maintain control over it will not be inferred but must be established by other proof. This proof may consist of circumstantial evidence from which a jury might properly infer that the accused had knowledge of the presence of the contraband and an ability to control it.
Brown v. State, 412 So.2d 420, 422 (Fla. 4th DCA 1982), aff'd, 428 So.2d 250 (Fla. 1983).
Here, the evidence presented to the jury established that De La Cruz was the individual who gave police permission to enter the residence, and he was the individual who signed the consent to search form. Significantly, De La Cruz told police that he was in control of the residence, that he had been living there and renting, and that he was the primary renter for five or six months. Although De La Cruz had not signed the lease, he was listed as one of the tenants on the rental agreement.
Testimony revealed that a woman named Lilliana Cabrolis had signed the lease and that the other tenants would be Sandra Perez and De La Cruz. However, no women's clothing was found in the residence when it was searched. Even though the residence had three bedrooms, De La Cruz's room was the only bedroom in the home that had furniture in it. While the majority concludes that the evidence seems to implicate David Gonzalez more than De La Cruz, De La Cruz conceded to police officers that Gonzalez did not live in the residence. These facts are distinguishable from those in Hill, 873 So.2d 491, in which the defendant apparently did not live in the apartment where police found the drugs but was spending the night.
Hill is also distinguishable in that the large caches of cocaine found in Hill were hidden in the voids under dresser drawers. In contrast here, the block of cocaine was found in an open kitchen cabinet. Detective Beal testified that the block drew his attention and that the first thing he noticed when he got closer to it was a strong smell, which is common for cocaine.
The facts in People v. Miller, 33 Cal.App.3d 191, 195, 108 Cal.Rptr. 788 (1973), are analogous to the facts here. The officer in Miller observed paper-wrapped kilo-shaped blocks or bricks in an open box and smelled a strong odor of marijuana. Id. The Miller court held that where police officers see a package with a unique shape common for drugs and notice a "notoriously distinctive and identifiable odor," it can be deemed to be in plain view. Id.; see also Nelson v. State, 867 So.2d 534, 537 (Fla. 5th DCA 2004) (holding, "Just as evidence in the plain view of officers may be searched without a warrant, evidence in the plain smell may be detected without a warrant."); Commonwealth v. Ciaramitaro, 51 Mass.App.Ct. 638, 747 N.E.2d 1253, 1259 (2001) (stating what an officer "sees, smells or hears" are "plain-view observations").
I cannot say the trial court erred in concluding from these facts that De La Cruz had the ability to control the contraband. Thus, I would affirm the decision of the trial court.
NOTES
[1] Section 893.101(2), Florida Statutes (2002), was enacted on May 13, 2002, before the date of De La Cruz's offense. It states that "knowledge of the illicit nature of a controlled substance" is not an element of offenses charged under chapter 893. That statute does not affect our analysis, which is grounded on the fact that the State failed to prove De La Cruz knew of the presence of the cocaine.
[2] The dissent relies on several cases discussing "plain view" in the context of a search and seizure analysis. See People v. Miller, 33 Cal.App.3d 191, 108 Cal.Rptr. 788 (1973); Nelson v. State, 867 So.2d 534 (Fla. 5th DCA 2004); Commonwealth v. Ciaramitaro, 51 Mass.App.Ct. 638, 747 N.E.2d 1253 (2001). We think that Chappell, 457 So.2d at 1134-35, and Bradshaw, 509 So.2d at 1309, which specifically address a "plain view" analysis in a constructive possession case, support our holding that the block of cocaine was not in De La Cruz's "plain view" for establishing that he knew of its presence. But even aside from that, under Florida law, we doubt that the testimony of the detective would support a finding that the cocaine was in his plain view for purposes of search and seizure. As our supreme court has held, a law enforcement officer may seize items in plain view if "the incriminating character of the evidence is immediately apparent" to the officer. Pagan v. State, 830 So.2d 792, 808 (Fla.2002). Here, the detective only thought the package might contain cocaine, and even after he removed the object from the cabinet and began to unwrap it, still only suspected it was "probably cocaine." "[W]hen closer examination of an item observed in plain view is necessary to confirm its incriminating nature, its nature is not considered `immediately apparent.'" Minter-Smith v. State, 864 So.2d 1141, 1144 (Fla. 1st DCA 2003).