IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4367

LINDSEY RENE TEMPLE,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____/

Opinion filed November 21, 2014.

An appeal from the Circuit Court for Escambia County.
J. Scott Duncan, Judge.

Nancy A. Daniels, Public Defender, and A. Victoria Wiggins, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Michael McDermott, Assistant Attorney General, Tallahassee, for Appellee.

BENTON, J.

Lindsey Rene Temple appeals her convictions and sentences for trafficking in amphetamine or methamphetamine (28 grams or more, less than 200 grams); the sale, manufacture, delivery or possession with intent to sell, manufacture, or

deliver a controlled substance (methamphetamine); unlawful possession of a listed chemical (anhydrous ammonia); and possession of drug paraphernalia. Tried with the boyfriend with whom she lived, Ms. Temple was sentenced to ten years' imprisonment with a mandatory minimum of seven years on the trafficking count; to ten years' imprisonment for the sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver a controlled substance; to ten years' imprisonment for unlawful possession of a listed chemical; and to time served for possession of drug paraphernalia, all sentences concurrent. The trial court erred in denying her motion for judgment of acquittal[1] on the first three counts, and we

---

[1] Counsel stated the motion on the record, in pertinent part as follows:

> Your Honor, I request the Court, as concerns Lindsay Temple, grant a motion of a directed verdict. The basis is that the evidence presented is not sufficient under our rules to warrant submission to the jury in that the only evidence put on shows mere proximity or presence, which is in and of itself not sufficient to indicate that she's involved. And there's no direct evidence to show her involvement, other than her mere presence or proximity to the house where the contraband and methamphetamine were found.
>
> There's no fingerprints. There's no evidence showing that she's dealing with anything. There's no forensics. There's no indication that she possessed anything on her person. She's just there in a house in which she occupies the bedroom and several other people occupy. But, like I said, she just has mere presence at the scene.

reverse the convictions and sentences on those counts. We affirm the conviction for possession of drug paraphernalia.[2]

Counts one and two charged Ms. Temple with trafficking in, selling, purchasing, manufacturing, delivering or possessing methamphetamine. But there was no attempt to prove that Ms. Temple ever sold, purchased, manufactured, or delivered methamphetamine. The prosecutor argued in closing: "To prove trafficking, the State has to prove four things beyond a reasonable doubt. The first is that he [and she] knowingly sold, purchased, manufactured, delivered, brought into the State or possessed a certain substance. And we're alleging, obviously, that they possessed it." "To prove [count two], we have three things to prove: That they possessed with the intent to manufacture a certain substance, the substance was methamphetamine, and the defendant[s] had knowledge of the presence of the substance." Later, the prosecutor told the jury in essence that the state had proven counts one and two by proof that Ms. Temple (and her boyfriend) had possession of the "meth oil" that law enforcement officers discovered in a cabinet under the kitchen sink.

As closing argument reflected, the first two counts boiled down to charges of constructive possession of methamphetamine (as to count one, in a "trafficking

---

[2] The drug paraphernalia count was properly allowed to go to the jury. Paraphernalia was found in plain view in the kitchen and living room areas, and, apparently under her dominion and control, in the bedroom Ms. Temple occupied.

3

amount"). Similarly, count three charged Ms. Temple with possession of anhydrous ammonia that law enforcement officers found in a bathroom and bedroom, rooms she may never have used. There was no evidence that she ever had. Because no methamphetamine or other contraband was found in her physical possession, Ms. Temple's convictions are necessarily based on a theory of constructive possession.

In a constructive possession case, the state has the burden to establish not only that the defendant knows contraband is present, but also that she has the ability to maintain control over it. See Evans v. State, 32 So. 3d 188, 189 (Fla. 1st DCA 2010). Knowledge and ability to control cannot be inferred from a defendant's mere proximity to contraband if possession of the premises where the contraband is found is joint. Where premises are occupied jointly, knowledge and ability to control must be established by independent proof. See Brown v. State, 428 So. 2d 250, 252 (Fla. 1983). While contraband in plain view in the common areas of a house may permit an inference of a householder's knowledge of its presence and of the ability to exercise control, see id., there must be "direct evidence of defendant's knowledge of the contraband upon the premises which cannot be inferred, absent the defendant's exclusive possession or control." Smith v. State, 279 So. 2d 27, 28 (Fla. 1973) (holding that no direct evidence tied a husband to the presence of illegal drugs in a dresser drawer in the bedroom jointly

4

occupied with his wife). Evidence permitted the inference that Ms. Temple was aware of certain paraphernalia in plain sight and capable of reducing it to her physical possession. But the state did not introduce sufficient evidence to establish her constructive possession either of methamphetamine (the meth oil in the cabinet) or of anhydrous ammonia, stored in tanks in rooms not shown to be part of a common area.

At trial there was testimony that Ms. Temple lived with her boyfriend at the residence where contraband was discovered, and that she had shared the home for more than a year. Law enforcement officers initially arrived at the residence to arrest Ms. Temple's boyfriend for whom they had an arrest warrant. After the boyfriend left the house and was taken into custody, officers asked him if anyone else was inside. He answered that Ms. Temple was in the house. In an effort to interview her, officers knocked on front and side doors for ten minutes to no avail. Eventually, another individual came to the door and, at the officers' request, went to look for Ms. Temple. When she came to the door, she appeared sleepy, one of the officers testified. After receiving consent from Ms. Temple to search the house for anything illegal, an officer discovered paraphernalia used for manufacturing methamphetamine in plain view in the kitchen and living room. Officers later returned with a search warrant and conducted a more thorough search.

The residence had three bedrooms and two bathrooms, one of which opened onto the master bedroom. Items used for manufacturing methamphetamine were found throughout the kitchen and living room in plain view. Within the master bedroom, the bedroom Ms. Temple occupied, a torch used for smoking methamphetamine was found. But the only item found anywhere that was found to contain methamphetamine was a jar of meth oil discovered in a cabinet underneath the kitchen sink.[3] One tank of anhydrous ammonia was found in the bathtub of the hallway bathroom, and a second tank of anhydrous ammonia was found within an orange cooler wrapped in a towel inside the third bedroom.[4]

Ms. Temple's theory of defense was that she was unaware of the presence or any production of methamphetamine in the residence because she limited her use of the residence to the master bedroom and the master bath. She claimed that she had been away from the residence the day before the search and only returned at four o'clock in the morning on the day of the search, went to bed, and slept until

---

[3] Although a law enforcement officer believed that a white powdery substance found on a plate in the living room was methamphetamine, the state concedes that counts one and two were both predicated upon the meth oil found in the kitchen cabinet, which was analyzed by a chemist and proven beyond a reasonable doubt to contain methamphetamine.

[4] A law enforcement officer testified that a strong odor of anhydrous ammonia was concentrated in the hallway bathroom, and that the odor was present in varying degrees throughout the residence. The officer testified that an average person would detect the odor, but would not necessarily know it was associated with methamphetamine. According to the officer, anhydrous ammonia "smells like regular ammonia, but completely different, if that makes sense."

she was awakened to meet officers at the door. A law enforcement officer who had the house under surveillance could not testify that Ms. Temple was in the house the day before the search occurred. The same officer testified that one method used to manufacture methamphetamine was "easy, fast" and could be completed in three to four hours, and that another manufacturing method, one that used anhydrous ammonia, took about six hours. Ms. Temple argued that any manufacturing operation that took place must have occurred while she was sleeping.[5]

The present case is not a case where a controlled substance was found in the defendant's bedroom or in plain view in a common area over which she had joint control. Cf. Duncan v. State, 986 So. 2d 653, 654–56 (Fla. 4th DCA 2008) (concluding there was sufficient evidence to create a factual question as to appellant's constructive possession when appellant was an occupant of the house, cocaine was found in plain view in a room used by all house occupants, a spoon with cocaine residue was found in the kitchen that appellant jointly controlled, baggies with cocaine residue were found in appellant's bedroom, and marijuana was found in a jacket hanging in appellant's bedroom). The circumstantial

---

[5] As the trial court noted, the time the house was searched was never established: "I don't know that it's ever been established what time they came in, the officers actually came in, now that I'm thinking about it." Because the state failed to establish when the search occurred, the state cannot rebut Ms. Temple's claim that a window of at least six hours existed between the time she returned home at four in the morning and the search.

evidence that the state introduced in the present case to prove constructive possession of methamphetamine and anhydrous ammonia was not inconsistent with Ms. Temple's reasonable hypothesis of innocence. See Evans, 32 So. 3d at 189.

In the present case, the meth oil was not found in plain view, but inside a kitchen cabinet. See De La Cruz v. State, 884 So. 2d 349, 350–52 (Fla. 2d DCA 2004) (holding that the state did not connect the defendant, who was a resident of the premises, to a block of cocaine found in a kitchen cabinet whose door was partly ajar). The state offered no evidence that the cabinet was open, that its contents were in plain view, or that Ms. Temple knew of its contents. The state also failed to establish that the hallway bathroom or third bedroom, where the anhydrous ammonia tanks were found, were common areas. Ms. Temple claimed that she occupied the master bedroom and bathroom, and no other bedroom or bathroom. See Porter v. State, 88 So. 3d 1074, 1075 (Fla. 1st DCA 2012) (concluding that the state's evidence was not inconsistent with appellant's claim that he had no dominion and control over the contraband). No personal items associated with Ms. Temple were found in either the hallway bathroom or the third bedroom, and law enforcement obtained no fingerprints from the residence or its contents.

The state's evidence was insufficient to sustain Ms. Temple's convictions based on constructive possession of meth oil and anhydrous ammonia. The prosecution argued to the jury that "You cannot live -- you cannot be in that house and not know it's a meth lab." Ms. Temple was not, however, charged with living in a meth lab. Although, as the trial court noted, items used for making meth were found in plain view in the kitchen and living room, there was no evidence that the meth oil in the kitchen cabinet—possession of which was the gravamen of counts one and two—was in plain view or that the hallway bathroom and third bedroom—where anhydrous ammonia tanks were found—were common areas, and there was no evidence about when anything was placed where the police eventually found it.

Accordingly, we reverse Ms. Temple's convictions on counts one, two, and three. As a result, it is unnecessary to address her argument that her convictions on both counts one and two violate double jeopardy protections.

Reversed in part and affirmed in part.

LEWIS, C.J. and MARSTILLER, J., CONCUR.