435 So.2d 902 (1983)
Vaughn Beasley CORDLE, Van Beasley Cordle, Theodore Calvin Spears and Daniel Emerson Smith, Appellants,
v.
STATE of Florida, Appellee.
Nos. AO-40, AO-41, and AO-42.
District Court of Appeal of Florida, First District.
July 18, 1983.
Rehearing Denied August 17, 1983.
*904 Jean Laramore of Laramore & Aye, P.A., Tallahassee, for appellants/Vaughn Cordle and Van Cordle.
Jack M. Ross, Gainesville, for appellant/Theodore Spears.
Michael L. Bryant, Gainesville, for appellant/Daniel Smith.
Jim Smith, Atty. Gen., Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, for appellee.
LARRY G. SMITH, Judge.
We affirm appellants' convictions, pursuant to jury verdict, of the offense of possession of marijuana in excess of 20 grams. Numerous grounds for reversal have been briefed and argued, some of which will not be discussed. We will discuss contentions regarding the alleged invalidity of the search warrant; improper exhibition of items of physical evidence to the jury; error in rulings on identification testimony; failure to prove the weight of the marijuana; and insufficient evidence of possession as to appellant Smith. We find no reversible error in these and other points raised by appellants.
The arrest and subsequent conviction of the appellants occurred under the following circumstances: A Piper Aztec airplane loaded with marijuana landed at the Gainesville Airport, Alachua County, Florida, at 12:21 a.m. on October 26, 1981. The pilots were later identified as Vaughn and Van Cordle, twin brothers. At approximately 4:00 a.m. the same morning, two other men later identified as appellants Spears and Smith arrived by van, whereupon the plane's cargo was loaded into the van. Meanwhile, an alert Sunny South Aviation Company lineman who was present when the plane landed, had become suspicious because of certain unusual circumstances, including his personal observation of extra fuel tanks and box-shaped packages wrapped in green material and duct tape inside the plane. He telephoned an airport security officer, who in turn telephoned the Gainesville Police Department.
Officers were present on the scene when the van arrived and the unloading of the marijuana took place. The occupants of the van, appellants Spears and Smith, were apprehended and arrested at the scene. Through information obtained from the lineman, a cab driver, and the night desk clerk at the Holiday Inn, downtown Gainesville, officers traced the Cordle brothers to Room 525 of the Holiday Inn, where they were placed under arrest. On the next day, October 27, officer Squires of the Narcotics and Organized Crime Unit, Gainesville Police Department, obtained a search warrant and conducted a search of Room 525, Holiday Inn, the van, and the airplane. The search of Room 525 yielded various items, including a small baggy of marijuana, aeronautical charts, owner's handbook for a Piper Aztec aircraft, a ballpoint pen with foreign writing, and a coin from Colombia, South America; a card containing radio frequencies and course coordinates, and ADIZ charts and maps showing routes to well known drug capitals in South America and the Carribean area; a bag containing flight manuals and aircraft logs, and other items.[1]
We see no point in further belaboring the facts of this case. The two appellants Spears and Smith were caught "red handed" at the airport. Appellants Cordle were traced to the Holiday Inn where they were arrested, and at the trial were identified as the pilots of the airplane.

*905 I.
We have carefully considered the contention of appellants Cordle that the court should have suppressed the evidence obtained from Room 525 because the affidavit upon which the warrant was issued contained material and false statements of fact. Alternatively, they contend that the trial court was in error in denying an evidentiary hearing to inquire into these alleged false statements. Neither contention has merit. It is apparent from examination of the affidavit, without consideration of the portions appellants contend were false, that it is more than sufficient to allege probable cause to believe that Room 525 contained evidence (the affidavit specified "a bag" containing maps, charts and other items) relating to the smuggling of the marijuana brought in on the airplane. The affidavit, with the questionable allegations excised, details the arrival of the plane, the facts learned from the airport lineman, the observation of the fuel tanks and bales inside, which the observing officers had ample reason to believe were cannabis; the unloading of the bales from the airplane and placement inside the van; the apprehension of appellants Spears and Smith, and other details which more than adequately established the existence of probable cause to believe that the airplane was being used for carrying a large quantity of cannabis. Furthermore, the affidavit recited that the lineman had obtained from one of the pilots of the plane a signed card (authority for the aircraft to remain overnight) in the name of "Bill Johnson," from Lexington, Kentucky. The pilots were observed to leave the airport shortly after arrival in a City Cab. It further alleged that a City Cab Company driver had been located who furnished information that he picked up two subjects from the airport at approximately 12:40 a.m., who he then transported to the Holiday Inn in downtown Gainesville; and further, that the clerk of the downtown Holiday Inn in Gainesville had advised that two white males had checked into Room 525 at 1:04 a.m., registering under the name of "Bob Johnson," from Lexington, Kentucky.
The discrepancies in the recitals of the affidavit as to the officers' observation of marijuana at the airport, the use of the term "bladder tanks," and the color and material of the nylon flight bag carried by one of the pilots do not, in our opinion, rise to the level of "deliberate falsehood or reckless disregard for the truth" within the requirements of Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). But even if these disputed details are disregarded, the affidavit is still sufficient to establish probable cause. The applicable law is stated in Franks v. Delaware, 438 U.S. at 171-172, 98 S.Ct. at 2684-2685:
There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing. Whether he will prevail at that hearing is, of course, another issue.
*906 Applying the above law, we find that the trial judge correctly denied the motion to suppress based upon falsity of the search warrant affidavit, and also correctly denied an evidentiary hearing on the motion. See, also, Mason v. State, 375 So.2d 1125 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 639 (Fla. 1980).

II.
Appellants moved for a mistrial at the conclusion of the state's case on the grounds that the state, over objection, had exhibited to the jury certain prejudicial items of physical evidence obtained from the search of the motel room and the plane, which were never admitted into evidence, and were later withdrawn by the state without explanation to the jury.
The bladder tank, some gas cans, a bag containing flight manuals and logs, and the card containing course coordinates and radio frequencies were admitted into evidence. Other items, including the baggie of marijuana found in Room 525, the Holiday Inn-Wildwood motel key, the ball point pen with foreign writing, and the coin from Colombia, South America, were excluded by ruling of the court. These excluded items were identified and testified about in the presence of the jury, but were later withdrawn by the state after the trial judge's final ruling of exclusion. It appears that the prosecution followed the procedure of having the questionable items "provisionally" admitted, subject to objection, upon condition that their relevancy and admissibility would be subsequently established during the state's case.
Appellants urge that because of the improper exposure to the jury of these excluded items of evidence, and the testimony concerning them, evidence of other criminal activity  smuggling, trafficking, or a conspiracy  was improperly permitted to be used against the appellants. Malcolm v. State, 415 So.2d 891 (Fla. 3rd DCA 1982).
We are unable to agree with appellants that reversible error was committed by the court. The items of evidence in question did not relate to any other crime, only to the crime charged. Items from the motel room tied appellants Cordle to the airplane, and to the appellants Spears and Smith. They were relevant and admissible to show knowledge on the part of appellants Cordle that the plane's cargo was indeed marijuana. This evidence, though tending to connect appellants together in a smuggling or trafficking enterprise, was relevant for consideration in connection with the criminal act for which appellants were being tried.
We agree with appellee's contention that evidence is not inadmissible merely because it tends to establish the existence of a conspiracy between codefendants to commit the substantive offense for which they are on trial, even though "conspiracy" is not formally charged. Damon v. State, 289 So.2d 720 (Fla. 1973); Brown v. State, 128 Fla. 762, 175 So. 515 (Fla. 1937). When considered separately, some of the items would seem to have no relevancy to the crimes for which appellants were on trial. However, relevancy may be established by consideration of all the other evidence in the case. See, Capo v. State, 406 So.2d 1242 (Fla. 1st DCA 1981).

III.
We turn next to appellants' contention that the trial court erred in ruling on eye-witness identification objections. We find the trial judge was correct in these rulings. The trial court suppressed the out-of-court identification of appellants Cordle by the motel desk clerk. At trial the desk clerk testified, initially on cross-examination, that he could not positively state that the persons who registered in Room 525 under the name "Bob Johnson" address "Lexington, Kentucky," were the same persons later that morning arrested in Room 525. The objection and motion to strike made during this testimony related to the admission of the room registration card. The trial court thereafter sustained an objection, on redirect, calling for the witness' opinion as to whether they were the same persons, and also sustained further attempts *907 to elicit in-court identification testimony after the witness stated that he could not positively identify the individuals who checked into Room 525. There was no error in the admission of the registration card for Room 525 under the name "Bob Johnson," of "Lexington, Kentucky," as evidence, considered together with other circumstances, tending to establish that the two individuals arrested in that room later that same morning were the same individuals who arrived in the airplane, gave the name of "Bill Johnson" of "Lexington, Kentucky," at the airport, and were transported to the Holiday Inn motel by City Cab. As for the identification testimony of the airport lineman, there was no objection to his positive and unequivocal in-court identification of appellants. We have reviewed the contention that the trial court erred in denying the motion to suppress the lineman's out-of-court as well as in-court identification and conclude that the presumptive correctness of the trial court's rulings has not been overcome on this appeal.

IV.
We disagree with the contention that the evidence of possession was insufficient as to appellant Smith. Appellant Smith was the driver of the van, gave the lineman a tip "for his troubles," and informed the airport employee that he and appellant Spears were there to pick up "machine parts" from the airplane. When Spears completed the loading of the van with marijuana from the plane, he drove the van to the front of the building where Smith was waiting. The state's evidence was sufficient to create a jury issue as to appellant Smith's joint custody and ability to maintain control over the marijuana, even though it was not shown that appellant Smith, in contrast to appellant Spears, was ever in actual physical possession of the bales of marijuana. Appellant Smith's actions indelibly stamp him as a participant in the act of taking possession of the plane's cargo, rather than one who was merely present at the scene, or in a dwelling or vehicle in which contraband is found. Cf. Shad v. State, 394 So.2d 1114 (Fla. 1st DCA 1981); Mishmash v. State, 423 So.2d 446 (Fla. 1st DCA 1983); Thompson v. State, 375 So.2d 633 (Fla. 4th DCA 1979).
As for appellant Smith's knowledge that the cargo of the plane was contraband, the jury was entitled to infer such knowledge from the totality of the circumstances, including the plane's late hour arrival, inconsistency in the statements made by the pilot concerning his lack of knowledge of anyone locally and the 4:00 telephone call and subsequent arrival of appellants Smith and Spears on the scene, appellant Smith's actions indicating a purpose to lure the lineman away from the plane during the unloading, and the lack of a plausible explanation for a 4:00 a.m. pick-up of "machine parts." Further, the Wildwood motel room key found in Room 525 of the Holiday Inn, where the Cordle brothers were arrested, tends to connect Spears and Smith with the Cordle brothers, whose possession and knowledge of the marijuana was clearly proven. In the face of strong inferences indicating appellant Smith's knowledge of the contraband character of the plane's contents, the jury was at liberty to reject the only other inference suggested by the evidence  that appellants Smith and Spears were there to unload "machine parts" from the plane. See, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The circumstances above outlined distinguish this case from Daudt v. State, 368 So.2d 52 (Fla. 2nd DCA 1979), and others cited by appellants, and clearly justify Smith's conviction as an aider and abettor. Section 777.011, Florida Statutes. As noted in Thompson v. State, supra, Bourg v. United States, 286 F.2d 124 (5th Cir.1960), furnishes a good example of a case in which two occupants of a car by proof of their activities in concert and other evidence were shown to have joint possession of heroin. Proof of active participation by Smith here was much stronger than as to defendant Ledet in the Bourg case.

V.
Finally, as for the contention that the state failed to prove the weight of the *908 marijuana, a necessary element under the offense proscribed by Section 893.13(1)(e), Florida Statutes (in excess of 20 grams), our reading of the record convinces us that a jury could reasonably conclude that technician Berger's testimony concerning the weight of "these bales" (99 pounds, 13 ounces, not included wrappings), referred to the three bales of marijuana from which Berger had removed test samples, and did not refer to the four bales not shown to contain marijuana.
All other grounds for reversal have been considered and rejected.
The judgment and sentence as to each of the appellants is AFFIRMED.
JOANOS, J., concurs.
NIMMONS, J., specially concurs with opinion.
NIMMONS, Judge, specially concurring.
I concur in the Court's opinion. With respect to the exhibits offered by the State, which were "provisionally" admitted and then ultimately excluded by the court, I agree that the trial judge correctly denied the appellants' motion for mistrial. The only error committed by the court with respect to such exhibits was error inuring to the benefit of appellants by the court's ultimate exclusion thereof. I concur in the Court's opinion that these articles were relevant and material and not inadmissible as "other crimes" evidence. Compare Malcolm v. State, 415 So.2d 891 (Fla. 3rd DCA 1982). The State's failure to cross-appeal from the trial court's ruling excluding such provisionally admitted evidence does not preclude our examination of the admissibility of such evidence in order to resolve the issue as to whether the trial court erred in denying the appellants' motion for mistrial.
NOTES
[1] One of these items was a key to a motel room in Wildwood, Florida, which had earlier been occupied by appellants Smith and Spears.