509 So.2d 1306 (1987)
Sharon Williams BRADSHAW, Appellant,
v.
STATE of Florida, Appellee.
No. BP-437.
District Court of Appeal of Florida, First District.
July 15, 1987.
*1307 William B. Richbourg, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., Norma J. Mungenast, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Chief Judge.
Appellant appeals her convictions for possession of cocaine with intent to sell or deliver, and possession with intent to use drug paraphernalia. She contends the trial judge should have entered a judgment of acquittal since the evidence was insufficient to establish constructive possession. We affirm.
Appellant and her sister were co-tenants, leasing a house owned by their mother. Also living in the house were appellant's children, her twenty-year-old brother, and sometimes her sister's boyfriend, Darren Potter.
The police received information that drug transactions were taking place in the house and that Potter, who lived there, was dealing cocaine. They were told that when the light on the east side of the house (at the back door) was on, that drugs could be purchased. The police watched the house *1308 and discovered that when the light was off there was no traffic coming and going but that when the light was on, cars would pull up, stay a couple of minutes, and then drive off. One evening when the light was on, police executed a controlled buy. Thereafter, they obtained a search warrant.
On the night the search warrant was executed, five people were in the house. Appellant and Mike Gordon were near appellant's bedroom, two small children were in the living room/dining room area, and Wanda Wright was walking from the living room area to the center of the house. When the officers identified themselves, Wanda placed the purse she was carrying on the kitchen counter. Wanda's purse contained money, receipts, and thirty capsules of cocaine. Twelve capsules of cocaine were found in a balloon in Mike Gordon's pocket. Neither appellant's sister nor Potter were present. However, a search of their room resulted in the discovery of a sifter and spoon on the nightstand and a small zip-lock baggie containing a white powder substance which was in the dresser. Nothing was found on appellant's person nor were any drugs found in appellant's bedroom.
Three items were found in the common areas of the house: (1) a plastic baggie containing cocaine was found on the top of the kitchen counter; (2) a few inches away, also on the kitchen counter, were 109 capsules (mostly pink) with cocaine residue which were in a white envelope; and (3) a plastic non-transparent bottle which contained pink, empty capsules and a plastic baggie containing a white powder substance (a cutting agent) was found on a countertop that went over the top of the cabinets in the kitchen. As to the nontransparent bottle, one of the officers explained that drug dealers "usually go for the plastic-type bottles because that's what they usually package Inositol and other cutting agents that they use for cutting cocaine." Similarly, there was testimony that pink capsules are the most common color of capsules for the distribution of cocaine.
While the officers were in the home, about eight to ten people came to the back, knocked on the door, and were searched as they came into the house. One of these people had rock cocaine in his possession.
Wanda Wright testified that she was at the house babysitting for appellant's sister, that she did not know that a drug operation was going on out of the house, and that the purse she was carrying was appellant's sister's purse and she was not aware of its contents. She testified that she didn't know if a lot of people were coming and going from the house; however, people were coming by the house asking for appellant or her sister. Wright pled nolo contendere to the possession of cocaine charge arising out of this incident.
Appellant testified that she did not know that Potter was living at the house, that she was seldom there, that she had never seen the plastic bottle or baggie of cocaine, and that she had previously seen some envelopes on the kitchen counter where everyone put the mail. She denied any knowledge that cocaine was in her house or that her sister was involved with cocaine. She testified she never saw pills or cocaine laying around. She also testified she never knew anything about the light being a signal and that she turned the light on when she was home for security purposes.
Based upon this evidence, the trial judge, who was sitting as the trier of fact, found appellant guilty as charged of possession of cocaine with intent to sell or deliver, and possession with intent to use drug paraphernalia.
To establish constructive possession of a controlled substance, the state must show that the acused had dominion and control over the contraband, knew the contraband was within her presence and knew of the illicit nature of the contraband. If the premises in which the contraband is found is in joint, rather than exclusive, possession of the defendant, knowledge of the contraband's presence and ability to control it will not be inferred from ownership *1309 but must be established by independent proof. Brown v. State, 428 So.2d 250 (Fla. 1983), cert. den., 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983). Such proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the controlled substance on the premises, or evidence of incriminating statements and circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the controlled substance on the premises. Frank v. State, 199 So.2d 117, 121 (Fla. 1st DCA 1967). Where the contraband is discovered in plain view in common areas of the house, joint occupancy, with or without ownership of the premises, is sufficient to support a conviction for constructive possession. Brown, 428 So.2d at 252. Drugs which are contained in a non-transparent envelope will not be considered to be in plain view. See Chappell v. State, 457 So.2d 1133 (Fla. 1st DCA 1984). Finally, the three elements of a constructive possession theory  dominion and control, knowledge of the presence of the contraband, and knowledge of the illicit nature of the contraband  may be proved by circumstantial evidence. Wale v. State, 397 So.2d 738, 739 (Fla. 4th DCA 1981).
Applying this law to the facts of this case, we find that the evidence that cocaine in a plastic baggie was in plain view on the counter top in the kitchen, a common area of appellant's house over which she had control, was sufficient to create a question for the trier of fact as to constructive possession of the cocaine. Brown v. State, 428 So.2d at 252. Since the drug paraphernalia was not found in plain view, in order to withstand a motion for judgment of acquittal, the state was required to offer independent proof of knowledge and the ability to control. We find that the state met this burden and that the facts adduced constituted sufficient evidence of incriminating circumstances from which the trier of fact could lawfully infer knowledge and ability to control the drug paraphernalia. See, e.g., Cordle v. State, 435 So.2d 902, 907 (Fla. 1st DCA 1983), pet. for rev. den., 447 So.2d 886 (Fla. 1984); and Muwwakil v. State, 435 So.2d 304, 305 (Fla. 3d DCA 1983), pet. for rev. den., 444 So.2d 417 (Fla. 1984).
AFFIRMED.
ERVIN and BOOTH, JJ., concur.