PER CURIAM.
In this direct appeal, Paul Dan Smith, III, challenges the judgments and sentences entered in two separate cases. We affirm the judgment and sentence in case number 2013-2017-CF without comment. We write only to address the issues raised regarding case number 2012-3590-CF.
I.
After a jury trial in case' number 2012-3590-CF, Smith was convicted of unlawful possession of a listed chemical , (pseu-doephedrine) and possession of ammunition by a convicted felon and sentenced to seven years in prison as a habitual felony offender. On appeal, Smith argues that the trial court erred in denying his motion for judgment of acquittal on both counts because the State failed to prove that he actually or constructively possessed the pseudoephedrine and ammunition. For the reasons that follow, we affirm Smith’s conviction for possession of a listed chemical, but we reverse the conviction for possession of ammunition.
In November 2012, three officers with the Bay County Sheriffs Office observed Smith sitting in the driver’s seat of a truck parked in the driveway of a residence in Panama City. A woman named Harlee Manning was in the passenger seat. After the officers removed Smith and Manning from the vehicle, they saw a clear plastic bag filled with ammunition in plain view in a cup holder in the truck’s center console. This prompted .the officers to conduct a full search of the vehicle, which led to the discovery of additional ammunition, blister packs containing 48 pseudoephedrine pills, two digital scales, a bottle of MSM (a *902 substance known to be used to manufacture methamphetamine), and a metal box containing drug paraphernalia and handwritten receipts purportedly used for drug transactions.
Officer Richard Bagwell testified that the blister packs of pseudoephedrine were located in an open compartment in the driver’s side door panel, making them visible and within “arm’s reach” of anyone sitting in the driver’s seat. The additional ammunition, scales, and MSM were found inside a closed compartment in the center console, and the metal box was located under the passenger’s seat, all outside of plain view. All of the items were processed for fingerprints, but no identifiable prints were found.
Officer Jamie Young explained that because pseudoephedrine is an “important substance in the manufacture of methamphetamine,” it was significant that the blister packs were not found inside the original store packaging. He testified that people who use pseudoephedrine for unlawful purposes often will dispose of the box that it came in to keep them purchase of the substance from being tracked by the name brand. He further testified that the digital scales, which may be used to “weigh controlled substances for the purpose of sale,” contained a substance that tested positive for the presence of methamphetamine. In addition, the receipts found inside the metal box contained the following handwritten notations: “Whiskey,” “3.5,” and “$350.” According to Officer Young, the going rate for methamphetamine was $100 a gram, so the notations likely signified the sale of 3.5 grams for $350. Officer Dennis Rozier testified that Smith is known to go by the nickname “Whiskey.”
At the close of the State’s case-in-chief, the defense moved for a judgment of acquittal, arguing that the State failed to establish that Smith was in possession of the pseudoephedrine and ammunition at the time of his arrest. The State asserted that there was sufficient evidence to prove actual possession because both items were within Smith’s reach and he had the ability to exercise control over them. The trial court denied the defense’s motion, stating “I’m going to let this go to the jury at this point.”
The defense called Aubrey Landree, who testified that she owned the truck and that the pseudoephedrine and ammunition found inside it belonged to her. Smith took the stand and testified that none of the items seized during the search were his, he never saw them while he was sitting in the truck, and he had no knowledge of their presence at that time. Smith acknowledged that his nickname was ‘Whiskey,” but he denied writing it on the receipts found inside the metal box. At the close of all evidence, the defense renewed its motion for judgment of acquittal, which the trial court again denied.
II.
The trial court’s ruling on a motion for a judgment of acquittal is reviewed de novo to ensure that there is legally sufficient evidence to sustain a conviction. Kemp v. State, 166 So.3d 213, 216 (Fla. 1st DCA 2015).
To obtain convictions for unlawful possession of a listed chemical and possession of ammunition by a convicted felon, the State had the burden to prove, inter alia, that Smith actually or constructively possessed the pseudoephedrine[1] and am *903 munition at the time of his arrest. See §§ 790.23(1), 893.149(1), Fla. Stat. (2012); see also Sundin v. State, 27 So.3d 675, 676 (Fla. 2d DCA 2009) (“All possession crimes may be either actual or constructive.”).
At trial, it was undisputed that the blister packs of pseudoephedrine and plastic bag of ammunition were not found in Smith’s hands or on his person; therefore, to establish actual possession, the State had to show that the items were within his “ready reach” and under his control. Harris v. State, 954 So.2d 1260, 1262 (Fla. 5th DCA 2007). To establish constructive possession, the State had to prove that Smith knew the items were present inside the truck and had the ability to exercise control over them. Smith v. State, 125 So.3d 359, 361 (Fla. 1st DCA 2013).
During the State’s case-in-chief, the prosecutor presented legally sufficient evidence to establish that the blister packs and ammunition were within Smith’s ready reach and that he knew they were present while he was inside the truck. There was no dispute that the items were found just inches away from where Smith was sitting in the driver’s seat. And, although Smith denied seeing the items while he was inside the truck, there was testimony from the officers that they were located in plain view. See Smith, 125 So.3d at 361 (explaining that the knowledge element of constructive possession may be inferred from evidence that contraband was located in plain view). Thus, the dispositive question presented by Smith’s motion for judgment of acquittal was whether the State had established his control over the pseu-doephedrine and ammunition. See Isaac v. State, 730 So.2d 757, 758 (Fla. 2d DCA 1999) (“Whether a defendant had dominion and control over contraband is generally a fact issue for the jury, but a judgment of acquittal is proper when there is no evidence from which dominion and control can be inferred.”).
Generally, if the place where contraband is located is jointly occupied, the State must establish the control element of possession through independent proof, such as fingerprints, an admission, or evidence of other incriminating statements or circumstances; a defendant’s mere proximity to the contraband is not sufficient. See, e.g., Smith, 125 So.3d at 361; Watson v. State, 961 So.2d 1116, 1117 (Fla. 2d DCA 2007). However, when contraband is located in plain view, control over the item may be inferred from evidence that the defendant has exclusive control over the place where it was discovered. Compare Brown v. State, 428 So.2d 250, 252 (Fla.1983) (control established where marijuana was found in plain view in the defendant’s presence in the common area of a home jointly owned by him), with Edison v. State, 956 So.2d 1275, 1277 (Fla. 2d DCA 2007) (control not established where contraband was found in plain view, but the defendant, who was a visitor, had no control over the jointly' occupied premises). This court has found that the same principle applies to contraband located in plain view in jointly occupied vehicles. See R.D.D. v. State, 15 So.3d 857, 858 (Fla. 1st DCA 2009).
In R.D.D., law enforcement conducted a traffic stop of a vehicle that contained three occupants, including the defendant, who was sitting alone on the right hand side of the back seat. Id. During a search of the vehicle, an officer found a small plastic bag of cocaine in plain view on the left hand side of the back seat. Id. Affirming the defendant’s conviction for possession of cocaine, this court found that the State had satisfied the control element of constructive possession because the evidence presented was sufficient to show *904 that the defendant had exclusive control over the area of the back seat where the cocaine was located. Id.
In contrast, in Martoral v. State, 946 So.2d 1240 (Fla. 4th DCA 2007), the Fourth District found that there was insufficient evidence to show that the driver of a jointly occupied vehicle had control over marijuana discovered in plain view in a compartment above the radio. Noting that the contraband was located the same distance from the defendant as the person in the passenger seat, the court concluded that “[njothing in the evidence before the trial court tied the marijuana to [the defendant] as opposed to the passenger.” Id. at 1242-43. Thus, the distinguishing factor, in Martoral is that the defendant did not have .exclusive control .over the area where the contraband was found.
Here, as in R.D.D., the State’s evidence was sufficient to establish that Smith had exclusive control over the driver’s side door panel where the blister packs of pseu-doephedrine were found. By establishing Smith’s control over that area of the vehicle, the jury Was permitted to infer that he also had the ability to exercise dominion and control over the blister packs. In addition, the presence of the digital scales, the bottle of MSM, and the purported drug transaction receipt containing Smith’s nickname “Whiskey,” were sufficient to create a question of fact about his intent to use. the pseudoephedrine to manufacture a controlled substance. For these reasons, the trial court properly denied Smith’s motion for judgment of acquittal on the charge of possession of a listed chemical.
As to the plastic bag of ammunition, this case is factually similar to the circumstances in Martoral. Like that case, the contraband at- issue here was found in plain view in a compartment (a cup holder) located between Smith and Manning, the other occupant of the vehicle. Although the ammunition was in Smith’s ready reach, the cup holder was not shown to be within his exclusive control. In fact, Officer Bagwell testified at trial that the plastic bag was actually closer to the passenger seat, where Manning was sitting, than the driver’s seat, where Smith was located. Thus, the State failed to establish that Smith had exclusive control over the place where the ammunition was located, 'making any inference that he had the ability to control the contraband impermissible.
Moreover, the State did not offer any independent proof tying the ammunition to Smith as opposed to Manning. It was undisputed that Smith was not the owner of the truck, there was no evidence that he purchased the ammunition or placed it in the truck, and no fingerprints were obtained to show that it belonged to him. In sum, Smith’s mere proximity to the ammunition, without more, was not legally sufficient evidence of the element of control. Accordingly, the trial court erred in denying Smith’s motion for judgment of acquittal on the charge of possession of ammunition by a convicted felon.
HL
In summary, we affirm Smith’s conviction and sentence for possession of a listed chemical. However, we reverse his conviction and sentence for possession of ammunition by a convicted felon because there was legally insufficient evidence to establish that Smith was in actual or constructive possession of the ammunition at the time of his arrest. ■
AFFIRMED in part; REVERSED and REMANDED in part.
WOLF and BILBREY, JJ., and • HULSLANDER, VICTOR L„ Associate ' Judge, concur.

. The parties stipulated that the substance inside the blister packs was pseudoephedrine. See § 893.033(1)(z), Fla. Stat. (2012) (providing that pseudoephedrine is a "precursor chemical” that may be used to manufacture a *903 controlled substance and "is critical to the creation of the controlled substance”).