# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D17-1894

———————————————

S. S., a child,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

———————————————

On appeal from the Circuit Court for Leon County.
Robert E. Long, Judge.

May 17, 2018

PER CURIAM.

   AFFIRMED. *See Brown v. State*, 428 So. 2d 250, 252 (Fla. 1983); *Bradshaw v. State*, 509 So. 2d 1306 (Fla. 1st DCA 1987).

LEWIS and OSTERHAUS, JJ., concur; MAKAR, J., concurs with opinion.

———————————————

   ***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

MAKAR, J., concurring.

The biblical injunction to flee from, and not keep company with, bad influences applies to college dormitories, where the close proximity of ne'er-do-well roommates and after-hours verboten jollities meld, raising the question: who possessed the marijuana and mason jar on the anteroom table in the downstairs "common area" in a compact four-bedroom townhouse located in Edith McCollum Hall[1] on the Florida State University campus at 4:10 a.m. on October 23, 2016?

When FSU Officer Cherry Martina responded to a complaint from dorm staff of loud music and marijuana fumes wafting from the townhouse (staff had intervened earlier, but their requests to tone it down were ignored), she immediately smelled the pungent aroma in the hallway leading to the townhouse. It grew much stronger when a resident of the townhouse opened the downstairs entry door. Just inside, the officer saw a table, couch, chairs, and video screen in the "common area," which was strewn with beer bottles, beer cans, marijuana "shake" in a mason jar,[2] cigarette wrapper casings (from which tobacco had been removed), and a bottle cut and shaped into a smoking apparatus.[3] Five young

---

[1] *See McCollum Hall*, HOUSING.FSU.EDU, https://housing.fsu.edu/_commonContent/residence-halls/mccollum-hall.html (last visited Mar. 26, 2018) ("Edith McCollum served as the Director of Housing at the Florida State College for Women/Florida State University from 1941-1970. McCollum Hall was completed and occupied before receiving its name, simply known as 'Hall X' until given its namesake.").

[2] *See Shake*, URBAN DICTIONARY, https://www.urbandictionary.com/define.php?term=shake (last visited Mar. 23, 2018) (defining "shake" as "[t]he cruddy end bits of a large bag of weed" or "loose marijuana in the bottom of any bag"). The mason jar had so few remnants that the defense asserted they could not find any, but the prosecutor was able to locate some.

[3] The apparatus was not retained as evidence. A "grinder" was also present, but it was never in S.S.'s presence in the common

men—four playing videogames and all appearing to be "under the influence" of drugs or alcohol—were present in the "common area," each disclaiming use or ownership of the contraband (one had a "grinder" in his pocket, which he claimed was not his). As citations for possession of marijuana were being written, an offer was made by the group that they play "rock, paper, scissors to see who could take the charge."

S.S., a seventeen-year-old co-resident of the townhouse, was charged with possession of cannabis and paraphernalia.[4] S.S., who the arresting officer said had bloodshot eyes and delayed speech and movement (though she couldn't say precisely from what substance), denied that the marijuana or mason jar were his. At trial, a roommate—who was playing videogames with his friends before the officer arrived—testified that S.S. neither used nor possessed the marijuana and mason jar; instead it was the roommate and his three buddies who did so (they'd been toking all day). The roommate avowed that he'd never seen S.S. possess marijuana or drug paraphernalia at any time and that S.S. was never present when the marijuana's use occurred in the townhouse. On the evening in question, S.S. was "probably like getting ready for bed, like eating or something. Like the dorm is two stories, so like he could have been there but not been like downstairs . . . ." Consistent with his testimony on this point, the officer who entered the townhouse said that S.S. was downstairs but towards the back of the room by the stairwell that led to the second floor bedrooms.

At the close of evidence in the bench trial, S.S. moved for a judgment of dismissal, his attorney arguing:

---

area; instead, one of the visitors had secreted it in his pocket (when Officer Martina arrived), where it was found later.

[4] S.S. pled no contest to a third charge, criminal mischief, arising from damage he caused to university property after he learned he was being cited for possession and spoke to his father on the phone.

[S.S.] was not at any time in possession of these items. He was not aware of these items. And he did not have the ability to exercise dominion and control over them. Simply because he's a resident of the home occupied by four different people, and clearly with the number of visitors, does not indicate that he had knowledge or the ability to exercise dominion and control. And an inference is not necessary where direct evidence to the contrary has been presented.

The trial court denied the motion (but made no factual findings), found S.S. guilty of possession of cannabis and paraphernalia, withheld adjudication of delinquency, and sentenced S.S. to three months of probation.

On appeal, S.S. claims that denial of his motion for judgment of dismissal was error, urging that nothing—other than S.S.'s physical presence in the townhouse at the time of the officer's entry—establishes a basis for S.S.'s constructive possession of the contraband (actual possession is not an issue, there being no evidence of such). He positions the case as a purely circumstantial one for which he provided a reasonable hypothesis of innocence (lack of knowledge and control over the contraband). The State counters that someone who jointly occupies a townhouse and is physically present in its common area where drugs and paraphernalia are in plain sight and smell can be deemed to have constructive possession of the contraband. ("Because the contraband was in [S.S.'s] presence, in plain view, in a common area of his own dorm, emitting a strong and distinct odor, and causing [S.S.] to exhibit indications of impairment,[5] there was

---

[5] Despite this statement in the State's answer brief and its similar statement during closing argument, no evidence supports that S.S. smoked marijuana, reeked of its odor, or was inebriated by it. No one testified that S.S. smoked marijuana; his roommate testified to the contrary. S.S. appeared to be "under the influence" but the arresting officer said she couldn't make a judgment whether it was due to alcohol, marijuana, or something else. She testified that the smell of marijuana was present at all times, including when she interviewed S.S. She never said, however, that the odor emanated directly from S.S. Given the State's claim that

4

sufficient evidence to create a question for the trier of fact about constructive possession.").

Our review of the denial of S.S.'s motion for judgment of dismissal is de novo with evidence viewed "in a light most favorable to the State, drawing all reasonable inferences in its favor." *Ramos v. State*, 89 So. 3d 1119, 1122 (Fla. 1st DCA 2012). Viewed in this way, the evidence showed that S.S. was a resident of the four-bedroom townhouse and was near the stairwell into the common area[6] where the marijuana and mason jar were in

S.S. smoked and was inebriated by marijuana, it is unclear why the trial judge refused to allow reference to test results from the Juvenile Probation Office, which reflected that S.S. tested "negative for all substances," the record not providing an unequivocal explanation.

[6] S.S. does not dispute that the small living space, where occupants of the four-bedroom townhouse have communal rights of use, is a "common area" for purposes of a constructive possession theory. Evidence could show that access, use, or control of a "common area" might, in actuality, be off-limits to a roommate whose co-tenants have excluded him; but that is not the case here. Indeed, this case is similar to *Bradshaw v. State*, 509 So. 2d 1306 (Fla. 1st DCA 1987), where Bradshaw lived in the house along with her siblings. Five people, including Bradshaw, were present in the house when a search warrant was executed. Officers found a plastic baggie containing cocaine on the top of the kitchen counter, although Bradshaw was not in the kitchen when the officers entered the house. *Id.* at 1308. Citing *Brown v. State*, 428 So. 2d 250, 252 (Fla. 1983), this Court found "that the evidence that cocaine in a plastic baggie was in plain view on the counter top in the kitchen, a *common area* of appellant's house over which she had control, was sufficient to create a question for the trier of fact as to constructive possession of the cocaine." *Id.* at 1309 (emphasis added). That a "common area" is involved distinguishes S.S.'s situation from the juvenile in *D.K.W. v. State*, 398 So. 2d 885, 886 (Fla. 1st DCA 1981), which reversed a charge of constructive possession of marijuana. In *D.K.W.*, two juveniles were found near marijuana, one claimed it was his alone, and both were found by police in the presence of a nearby "roach." *Id.* at 885. The

5

conspicuous view on a table. The lingering vapors of marijuana smoke were easily detectable, and the detritus of loud, late-night merrymaking was strewn about; S.S. also had signs of being "under the influence," though the influencer wasn't clear.

A constructive possession theory required the State "to prove two elements: that [S.S.] had (1) dominion and control over the contraband and (2) knowledge that the contraband was within his presence." *Knight v. State*, 186 So. 3d 1005, 1012 (Fla. 2016).[7] This type of claim can be proven by circumstantial evidence, but it is subject to the "circumstantial evidence standard," which requires that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt[,] a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id.* at 1009 (quoting *Jaramillo v. State*, 417 So. 2d 257, 257 (Fla. 1982)). A major limitation, however, is that the "circumstantial evidence standard of review applies only where *all* of the evidence of a defendant's guilt—i.e., the evidence tending to show that the defendant committed or participated in the crime—is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence." *Knight*, 186 So. 3d at 1010 (emphasis added).

To begin, the case against S.S. is not based entirely on circumstantial evidence. Like the situation in *Knight*, which involved a traffic stop where marijuana was found in a suitcase in

---

marijuana in *D.K.W.* was located "in a public place, behind a wall at a school, in spacial proximity equally near both boys," rather than in a townhouse units' common area. *Id.* at 886. As such, that case—upon which S.S. relies heavily—is inapplicable.

[7] Knowledge of the illicit nature of the contraband was eliminated legislatively in 2002. *See* Ch. 2002-258, § 1, at 1848, Laws of Fla; § 893.101(2), Fla. Stat. (2018) ("[K]nowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.").

the back seat of a car occupied by three acquaintances, Officer Martina's "testimony about the location of the cannabis [is] *direct evidence* of dominion and control" as to S.S., who was located by the townhouse's internal stairwell adjoining the common area when the officer discovered the contraband. *Id.* at 1012 (emphasis added). The same is true as to her testimony about the intensity of the smell of marijuana inside the townhouse where S.S. resides and S.S.'s lack of sobriety. As such, the "circumstantial evidence standard" does not apply because some of the evidence tending to show S.S.'s constructive possession of the contraband is direct evidence. For this reason, appellate review of the denial of S.S.'s motion for judgment of dismissal is de novo, and his conviction will be reversed if "not supported by competent, substantial evidence." *Id.* at 1012. A "conviction is supported by sufficient evidence where a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the State." *Id.*

Turning to the elements of constructive possession, and going in reverse order, the second element—knowledge of the contraband's presence—is met. No question exists that a rational judge could conclude that S.S. saw the marijuana (and smelled its burnt odor) in the common area of the townhouse based on the officer's testimony. Perhaps S.S. didn't see or smell it, but a conclusion that he did is reasonable under the circumstances.

The first element—dominion and control over the contraband—is more knotty because the only supporting evidence is that S.S. was a joint resident in the four-bedroom townhouse, and that the marijuana and mason jar were openly displayed on the table in the common area during the early morning hours when Officer Martina paid a visit. That S.S. resided in the townhouse, and was not just a visitor or guest that evening, results in a more stringent legal standard because a resident is presumed by law to have a degree of dominion and control over the property that a visitor or guest lacks. *See, e.g., J.S.M. v. State*, 944 So. 2d 1143, 1144 (Fla. 2d DCA 2006) (Because no evidence existed that the minor "was an occupant of the room rather than a guest, the court could not infer that he had the ability to control the contraband simply because it was in plain view."). To implement this presumption, the standard legal test for a *joint* possessor of a

7

home, townhouse, or other similar property states: "If the premises where contraband is found is in joint, rather than exclusive, possession of a defendant, . . . knowledge of the contraband's presence and the ability to control it will not be inferred from the ownership but must be established by independent proof." *Brown*, 428 So. 2d at 252; *see Bradshaw v. State*, 509 So. 2d 1306, 1308-09 (Fla. 1st DCA 1987) (same). To establish the "control element of possession" the "independent proof" may consist of "fingerprints, an admission, or evidence of other incriminating statements or circumstances; a defendant's mere proximity to the contraband is not sufficient." *Smith v. State*, 175 So. 3d 900, 903 (Fla. 1st DCA 2015). So, for example, if the marijuana and mason jar had been found hidden from view in the back of a kitchen cupboard, independent proof—such as S.S.'s fingerprints on the jar—would be required to show control.

One form of independent proof of control, however, is "when *contraband is located in plain view*, control over the item may be inferred from evidence that the defendant has *exclusive* control over the place where it was discovered." *Id.* (emphasis added). If S.S. were the only resident in the townhouse, this principle would apply. But a related principle applies under the supreme court's decision in *Brown*, which addressed the following certified question: "Does ownership and joint occupancy of a premises where illegal drugs are discovered in plain view, in the presence of the owner, constitute sufficient evidence to support a conviction for constructive possession as to the owner or as to a lessee under the same circumstances?" 428 So. 2d at 251. Brown, who owned a home where he and two co-tenants resided, was found to have constructive possession of drugs strewn throughout the residence due to his "superior possessory rights."[8] In answering the certified question affirmatively, the supreme court said:

> Brown claims that he could be convicted of constructive possession on the instant facts only if the jury impermissibly piled inference upon inference. We do not

---

[8] *Brown v. State*, 412 So. 2d 420, 422 (Fla. 4th DCA 1982), *approved*, 428 So. 2d 250 (Fla. 1983).

8

find, however, that the jury would have to have drawn an impermissible inference. In the instant case the knowledge element is met because the contraband was in plain view in common areas throughout the house. *The dominion and control element is met because Brown, as **resident owner of his home**, had control over the common areas.* Therefore, the elements of knowledge and control have been satisfied, and, as the district court found, the facts presented at trial were sufficient to create a jury question as to constructive possession.

*Brown*, 428 So. 2d at 252 (emphasis added) (footnote omitted). The highlighted sentence establishes that a "resident owner" has "dominion and control" over the "common areas" of his home, which, in combination with the resident owner being present when contraband is found, amounts to constructive possession. The supreme court in *Brown* went further, however, issuing the same pronouncement as to co-tenants, answering affirmatively the following certified question: "Where two or more persons jointly occupy premises and illegal drugs are discovered in plain view, in their presence, is such proof, without more, sufficient to support a conviction for constructive possession as to each person?" 428 So. 2d at 251. It viewed this question as "virtually identical to the first question" except as to the issue of ownership, which it found to be immaterial. *Id.* at 252. In sum, the court held that "joint occupancy, *with or without ownership of the premises*, where contraband is discovered in plain view in the presence of the owner or occupant is sufficient to support a conviction for constructive possession." *Id.* (emphasis added).

By its holding, the supreme court effectively did away with the distinction between whether a conviction can be "based upon evidence of knowledge and control *over the place where the contraband is located*, in this case a residence, as opposed to evidence of control *over the contraband itself*." *Brown*, 412 So. 2d at 423 (Anstead, J., concurring) (emphasis added). Instead, physical presence in a jointly-occupied space where contraband is in plain view is legally sufficient to convict.[9]

---

[9] The Florida Supreme Court recently said that the two elements of construction possession theory are "(1) dominion and

*Brown* has many ramifications, a few applicable to this case. The first is a practical one. It is possible, if not likely, that a college student living in a multi-bedroom townhouse on a college campus may have a roommate at some point who possesses or uses illegal drugs openly (or, as is pertinent to minors such as S.S., lawfully possesses and uses alcohol) and leaves them in "plain view" in a "common area" of the townhouse from time to time.[10] Under

control *over the contraband* and (2) knowledge that the contraband was within his presence." *Knight*, 186 So. 3d at 1012 (emphasis added). But the italicized statement appears to be shorthand for control over the place where contraband was located, not the contraband itself. In *Knight*, at issue was whether a suitcase with a luggage tag bearing Knight's name, found in the back seat of a vehicle driven by Knight, was within his control. The supreme court concluded that it was, saying the "State demonstrated Knight's dominion and control over the cannabis by introducing evidence that Knight owned the suitcase containing it. Although Knight did not testify that he owned the luggage, the jury could have instead accepted [the arresting deputy's] testimony that the suitcase contained a luggage tag identifying Knight as its owner." *Id.*

[10] Soon after *Brown* was decided, a commentator said the "effect of the Florida Supreme Court's holding is that a joint occupant living with others who insist on using illegal drugs must either vacate the premises or report the violation." Robert J. Surrette, *Constructive Possession of Illegal Drugs: The Inferential Leap from Joint Occupancy to Joint Control*, 12 STETSON L. REV. 512, 524 (1983). In the higher education context, immediately vacating a dormitory may be difficult, but not impossible; reporting the situation, though the admirable and upstanding choice, may cause ostracism, retaliation, or worse, but reporting does not forestall a constructive possession charge, it merely presents the reporter in a better light if charged. Another option is to insist that roommates keep common areas drug-free, which presents its own challenge—known in economics as the "tragedy of the commons"—where everyone has an equal right to use a common resource, resulting in over-utilization because no one can be excluded; attempts to self-regulate a "common area" in a multi-bedroom townhouse or dormitory presents a similar challenge, particularly

10

*Brown*, evidence of actual control of the contraband itself is unnecessary; all that is required to sustain a conviction based on a constructive possession theory is that the defendant be a resident of a jointly-occupied apartment, townhouse, or condominium and that contraband be found in plain view in his presence. *Brown* effectively held that a jury is not legally compelled to find any independent evidence linking the joint occupant to the particular drug seized under these circumstances. "On the contrary, the jury is permitted to infer that the joint occupant 'controlled' the illegal drugs based merely on evidence that the illegal drugs were discovered in plain view and in his presence." Robert J. Surrette, *Constructive Possession of Illegal Drugs*, 12 STETSON L. REV. at 522.

An otherwise blameless dormmate—whose only transgression is being present when contraband is found in a common area of a living room, dining area, or kitchen—can be swept into the same category as those actually using or possessing the illegal items, leaving the fact-finder much discretion to decide guilt versus innocence. Applied here, a fact-finder could conclude that S.S. was present during the marijuana festivities in the common area of the townhouse, but lacked control over the situation and the raucous partiers in his midst; he was in the wrong place at the wrong time, having nothing to do with those raising Cain. *See Wade v. State*, 558 So. 2d 107, 108 (Fla. 1st DCA 1990) ("After thoroughly reviewing the record, we have concluded that the State proved only that appellant was in the room at the same time four other people were there."). A fact-finder could just as readily find S.S. to have constructive possession of the contraband, as the trial judge did, notwithstanding the testimony to the contrary by S.S.'s roommate, which may have been disbelieved. Either outcome would be permissible on this record, even if one more closely approximates the truth.

---

where group quarters are shared with strangers. *See* ROBERT C. ELLICKSON, INFORMAL ORDER AROUND THE HEARTH, 112-13 (2008) ("Some colleges and universities encourage students who are roommates to negotiate detailed written contracts to govern behavior in shared space. These contracts make sense, if they ever do, when roommates are total strangers, such as entering freshman.").

Another ramification is the breadth of *Brown*'s holding. Years ago, before *Brown* was decided, our Court in a constructive possession case said:

> *We decline to presume that all inhabitants and guests in a private home are in control and constructive possession of marijuana being smoked by one or merely some of them.* [Defendant's] movement to close the door once opened [after police had knocked] betrayed his consciousness that marijuana was in the place, but hardly was additional evidence of his possession of it. The officers' sense of smell reliably told them that marijuana was being consumed within, but it could not and did not identify [Defendant] or any other occupant as a misdemeanant or felon.

*Britton v. State*, 336 So. 2d 663, 665 (Fla. 1st DCA 1976) (emphasis added). *Brown* effectively weakened the italicized language, such that any occupant who is physically present in a common area of a jointly-occupied dwelling where contraband is in plain view is subject to a constructive possession charge. By this prevailing legal standard, the record contains competent, substantial evidence by which the trial judge could conclude that S.S. had constructive possession of the marijuana and mason jar. For this reason, it was proper to deny S.S.'s motion for judgment of dismissal.

_____

Andy Thomas, Public Defender, and Justin F. Karpf, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.